# Syllabus

Chief Justice:

Robert P. Young, Jr.

Justices:

Michael F. Cavanagh
Marilyn Kelly
Stephen J. Markman
Diane M. Hathaway
Mary Beth Kelly
Brian K. Zahra

**This syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader.**

Reporter of Decisions:
John O. Juroszek

## PEOPLE v TRAKHTENBERG

Docket No. 143386. Argued October 10, 2012 (Calendar No. 2). Decided December 21, 2012.

Jacob Trakhtenberg was convicted of three counts of second-degree criminal sexual conduct after a bench trial in the Oakland Circuit Court, Deborah G. Tyner, J. The charges stemmed from allegations of sexual contact made by defendant's then 8-year-old daughter. The Court of Appeals, ZAHRA, P.J., and BANDSTRA and OWENS, JJ., affirmed defendant's convictions in an unpublished opinion per curiam, issued March 27, 2007 (Docket No. 268416). The Supreme Court denied defendant's application for leave to appeal. 480 Mich 856 (2007). Defendant then moved for relief from the judgment under subchapter 6.500 of the Michigan Court Rules, asserting that he was entitled to a new trial because he was denied the effective assistance of trial and appellate counsel and, alternatively, that newly discovered evidence warranted a new trial. The trial court, Daniel P. O'Brien, J., denied the motion. The Court of Appeals denied defendant's application for leave to appeal in an unpublished order, entered March 20, 2009 (Docket No. 290336). In lieu of granting leave to appeal, the Supreme Court retained jurisdiction and remanded the case to the Court of Appeals for consideration as on leave granted and ordered the Court of Appeals to remand the case to the trial court to conduct an evidentiary hearing in order to evaluate defendant's claims. 485 Mich 1132 (2010). Meanwhile, defendant had also brought a malpractice claim against his trial counsel in the Oakland Circuit Court. The court, Shalina D. Kumar, J., granted summary disposition in favor of defendant's trial counsel. The Court of Appeals, MURRAY, P.J., and MARKEY and BORRELLO, JJ., affirmed that decision. *Trakhtenberg v McKelvey*, unpublished opinion per curiam, issued October 27, 2009 (Docket No. 285247). Defendant sought leave to appeal in the Supreme Court, which ordered that the application be held in abeyance pending resolution of the criminal case. *Trakhtenberg v McKelvey*, 780 NW2d 828 (Mich, 2010). Following the evidentiary hearing on remand in the criminal case, the trial court, Daniel P. O'Brien, J., ruled that defense counsel had been ineffective and that defendant was entitled to a new trial. The Court of Appeals, DONOFRIO, P.J., and CAVANAGH and STEPHENS, JJ., reversed in an unpublished opinion per curiam, issued May 19, 2011 (Docket No. 290336). The Court of Appeals reasoned, in part, that collateral estoppel precluded it from reviewing the performance of defendant's trial counsel because in the malpractice case the Court of Appeals had held that defendant's trial counsel's performance fell within the "attorney judgment" rule. The Supreme Court granted defendant's application for leave to appeal. 490 Mich 927 (2011).

In an opinion by Justice CAVANAGH, joined by Justices MARILYN KELLY, MARKMAN, and MARY BETH KELLY, the Supreme Court *held*:

Collateral estoppel may not be applied on the basis of a prior civil judgment holding that defense counsel's performance did not amount to malpractice in order to preclude review of a criminal defendant's claim of ineffective assistance of counsel.

1. Generally, the proponent of the application of collateral estoppel must show that (1) a question of fact essential to the judgment was actually litigated and determined by a valid and final judgment, (2) the same parties had a full and fair opportunity to litigate the issue, and (3) there was mutuality of estoppel. In determining whether the party opposing collateral estoppel had a full and fair opportunity to adjudicate his or her claim, a court must take into consideration the choice of forum and the incentive to litigate. Cross-over estoppel occurs when the application of collateral estoppel crosses over the line between civil and criminal proceedings. Although some cases have suggested that collateral estoppel may be applied when an issue adjudicated in a prior civil proceeding is claimed to be precluded in a subsequent criminal proceeding, those cases were distinguishable because, in this case, it was the prosecution and not defendant that sought to apply the doctrine. In this case, the Court of Appeals erred by applying collateral estoppel because defendant did not have a full and fair opportunity to litigate his claim in the malpractice proceeding. Defendant's interests when pursuing the malpractice claim differed from his interests in asserting his constitutional right to the effective assistance of counsel. In the civil case, defendant sought monetary gain, and in the criminal case he sought protection of his liberty. Because he had a different and, most likely, stronger incentive to litigate counsel's errors in the criminal proceeding, the prior malpractice case did not afford defendant a full and fair opportunity to litigate his claim of ineffective assistance of counsel.

2. Both the Michigan and United States Constitutions require that a criminal defendant enjoy the assistance of counsel for his or her defense. In order to obtain a new trial, a defendant must show that (1) counsel's performance fell below an objective standard of reasonableness and (2) but for counsel's deficient performance, there is a reasonable probability that the outcome would have been different. In examining whether defense counsel's performance fell below an objective standard of reasonableness, a defendant must overcome the strong presumption that counsel's performance was born from a sound trial strategy. But a court cannot insulate review of counsel's performance by calling it trial strategy. The court must determine whether defense counsel made the strategic choices after less than complete investigation, and any choice is reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation. In this case, defense counsel failed to exercise reasonable professional judgment when deciding to forgo particular investigations relevant to the defense, including her failure to identify the factual predicate of each of the five charged counts of criminal sexual conduct, her failure to consult with key witnesses, and her failure to sufficiently develop the defense presented at trial. Accordingly, her representation fell below an objective standard of reasonableness. Defendant was unfairly prejudiced by counsel's deficient performance. The key evidence against defendant was the complainant's testimony. Therefore, the reliability of defendant's convictions was undermined by defense counsel's failure to introduce impeachment evidence and evidence that corroborated defendant's testimony that defense counsel was unaware of because she decided to forgo those investigations. Had the impeachment evidence and the evidence that corroborated defendant's testimony been introduced, there was a reasonable probability that the result of the trial would have been different.

Court of Appeals' judgment reversed; case remanded to the trial court for a new trial.

Chief Justice YOUNG, joined by Justice ZAHRA, dissenting, agreed that collateral estoppel did not bar review of defendant's claims of error, but disagreed with the majority's analysis of that issue and disagreed with the majority's conclusion that defendant did not receive effective assistance of counsel. Accordingly, he would have affirmed the result reached by the Court of Appeals. Instead of examining defendant's interests in litigating his malpractice claim as the majority did, Chief Justice YOUNG would have considered the elements required to apply collateral estoppel. In this case, the first element necessary to apply collateral estoppel was not satisfied because defendant's claim of ineffective assistance of counsel was not actually litigated and determined by a valid and final judgment in the malpractice action. A party asserting malpractice must establish that, but for the negligence, the outcome of the case would have been favorable to the plaintiff. However, a criminal defendant may be entitled to a new trial on the basis of ineffective assistance of counsel even if the errors of counsel cannot be shown by a preponderance of the evidence to have determined the outcome. Because a legal malpractice action requires a higher threshold of prejudice than a claim of ineffective assistance of counsel, a defendant can establish ineffective assistance of counsel even if he or she cannot establish legal malpractice. Nonetheless, the result reached by the Court of Appeals should have been affirmed because defendant failed to establish that counsel's performance was outside the wide range of professionally competent assistance leading to a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. The lower courts did not err by determining that defense counsel's trial strategy was objectively reasonable, and the Court of Appeals correctly reversed as an abuse of discretion the trial court's decision to grant defendant a new trial, the sole basis for which was that counsel did not proffer a defense focusing on the character of the complainant's mother. Moreover, even if counsel was deficient for failing to conduct particular investigations, adequately impeach the complainant, or introduce potentially corroborative testimony, defendant could not satisfy the prejudice requirement for a claim of ineffective assistance of counsel.

Justice HATHAWAY did not participate because of a professional relationship with a member of a law firm involved in the matter.

©2012 State of Michigan

# Opinion

Chief Justice:          Justices:

Robert P. Young, Jr.    Michael F. Cavanagh
                        Marilyn Kelly
                        Stephen J. Markman
                        Diane M. Hathaway
                        Mary Beth Kelly
                        Brian K. Zahra

FILED DECEMBER 21, 2012

STATE OF MICHIGAN

SUPREME COURT

PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff-Appellee,

v                                                    No. 143386

JACOB TRAKHTENBERG,

      Defendant-Appellant.

BEFORE THE ENTIRE BENCH (except HATHAWAY, J.)

CAVANAGH, J.

      This case requires us to determine whether collateral estoppel may be applied to preclude review of a criminal defendant's claim of ineffective assistance of counsel when a prior civil judgment held that defense counsel's performance did not amount to malpractice. We hold that collateral estoppel may not be applied in these circumstances because defendant did not have a full and fair opportunity to litigate his ineffective-assistance-of-counsel claim, contrary to the requirements of the doctrine itself.

      Given our conclusion that collateral estoppel is inapplicable, we must also determine whether defendant was deprived of his right to the effective assistance of

counsel under *Strickland v Washington*, 466 US 668; 104 S Ct 2052; 80 L Ed 2d 674 (1984). We hold that defense counsel's performance was constitutionally deficient because she failed to exercise reasonable professional judgment when she decided to forgo any investigation of the case before settling on a defense strategy. That deficiency prejudiced defendant by undermining the reliability of the outcome of his trial, which rested solely on the credibility of the complainant and defendant. Accordingly, we reverse the judgment of the Court of Appeals and remand this case to the trial court for a new trial.

## I. FACTS AND PROCEEDINGS

Defendant was charged with five counts of second-degree criminal sexual conduct (CSC-II) for allegedly touching the genitals of his eight-year-old daughter and forcing her to touch his genitals. During the bench trial, the complainant testified that defendant touched her three or four times (once or twice while she was in defendant's bed at night) and would lower her hand to his genitals. Lilya Tetarly, the complainant's mother and defendant's ex-wife, testified that in 2004 the complainant developed yeast infections. On direct examination, Tetarly denied asking defendant to treat the yeast infections with ointment and stated that the complainant became upset when she had to go to defendant's home. Defense counsel did not cross-examine Tetarly. As the only defense witness, defendant testified that he never forced the complainant to touch his genitals and that he touched the complainant's genitals six times to apply medication at Tetarly's insistence after a heated argument over whether it was appropriate for him to apply the ointment. Defendant was convicted of three counts of CSC-II. Two counts were based on evidence that defendant touched the complainant and one count was based on evidence that

defendant forced her to touch his genitals. After the parties' closing arguments, the trial court commented that "very little's clear to me in this case, starting with what the allegations are that go to each count."

On direct appeal, defendant argued that defense counsel was ineffective for failing to impeach Tetarly with evidence of bias pertaining to their divorce four years earlier. Defendant argued that Tetarly had attempted to hit him with her car, which was supported by a police report, and assaulted him while he was driving, which resulted in Tetarly's arrest on domestic violence charges. The Court of Appeals denied defendant's motion for an evidentiary hearing pursuant to *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973),[1] and held that defense counsel was not ineffective for failing to impeach Tetarly because the record lacked evidence to show that she was still upset over the divorce. *People v Trakhtenberg*, unpublished opinion per curiam of the Court of Appeals, issued March 27, 2007 (Docket No. 268416). Defendant applied for leave to appeal in this Court, which was denied. *People v Trakhtenberg*, 480 Mich 856 (2007).

Defendant subsequently filed a legal malpractice claim against defense counsel, which the trial court dismissed upon defense counsel's motion for summary disposition. The Court of Appeals affirmed, holding that defense counsel's performance fell within the "attorney judgment rule." *Trakhtenberg v McKelvy*, unpublished opinion per curiam

---

[1] The Court also denied defendant's subsequent motion to hold the appeal in abeyance to give defendant more time to verify additional grounds for bias—namely, that Tetarly had previously made false allegations that defendant's prior wife sexually abused defendant's son from that marriage in order for defendant to gain an advantage in the then pending custody dispute over defendant's son, HT.

of the Court of Appeals, issued October 27, 2009 (Docket No. 285247).[2] See, also, *Simko v Blake*, 448 Mich 648; 532 NW2d 842 (1995). Meanwhile, in his criminal case, defendant filed a motion for relief from judgment under MCR 6.508(D)(3), claiming that he was entitled to a new trial because he was denied the effective assistance of trial and appellate counsel and, alternatively, that newly discovered evidence warranted a new trial. The trial court denied the motion under MCR 6.508(D)(3)(b), and the Court of Appeals denied defendant leave to appeal. *People v Trakhtenberg*, unpublished order of the Court of Appeals, entered March 20, 2009 (Docket No. 290336). In lieu of granting leave to appeal, this Court retained jurisdiction and remanded the case to the Court of Appeals for consideration as on leave granted, and the Court of Appeals was ordered to remand the case to the trial court to conduct a *Ginther* hearing in order to evaluate defendant's claims. *People v Trakhtenberg*, 485 Mich 1132 (2010).

During the course of the *Ginther* hearing, voluminous testimony was taken. Tetarly admitted that she was dissatisfied with the divorce judgment and had made negative comments about defendant in front of the complainant. And, for the first time, Tetarly disclosed that before reporting the complainant's allegations of abuse to the authorities, she brought the complainant to a youth pastor. Tetarly stated that she then brought the complainant to CARE House, which provides intervention and treatment services for child victims of abuse, where Amy Allen, a CARE House employee, performed a forensic interview, during which the complainant alleged the abuse. The

---

[2] Defendant sought leave to appeal in this Court. We ordered that the application be held in abeyance pending a decision in this criminal case. *Trakhtenberg v McKelvy*, 780 NW2d 828 (Mich, 2010).

4

responding detective's police report states that the detective asked Tetarly to directly ask the complainant whether defendant had ever touched her "private parts" with his fingers. That questioning eventually led to the complainant's second formal allegation of abuse.

Allen, who was unaware that the complainant had spoken to others about the abuse, testified that it is important to know whether the child has spoken to anyone else in order to conduct a proper forensic interview because, as a result of repeated interviewing, a child might start to mistakenly believe that something happened to him or her. Additionally, Dr. Katherine Okla, a clinical psychologist specializing in sexual abuse, noted her concern regarding the complainant's knowledge of her mother's hatred of defendant and explained that Tetarly's leading and suggestive questions and the repeated questioning of the complainant (especially in a therapeutic rather than forensic setting) could have tainted the child's recollection of the events surrounding the alleged abuse. Defendant testified that he had requested that defense counsel consult with numerous witnesses including Allen and HT, who was defendant's son.

Defense counsel testified that her defense theory was two-fold: she would (1) impeach the complainant's trial testimony with an inconsistent statement regarding the number of times defendant made her touch him and (2) show that defendant lacked the requisite intent of sexual gratification to be convicted of CSC-II.[3] Additionally, she advised defendant to waive his preliminary examination, and she did not demand

---

[3] MCL 750.520a(q) defines "sexual contact," in relevant part, as the "intentional touching of the victim's or actor's intimate parts . . . if that intentional touching can reasonably be construed as being for the purpose of sexual arousal or gratification, [or] done for a sexual purpose . . . ."

5

discovery, obtain Allen's notes, or interview any witnesses because she felt that any further information was irrelevant to the defense theories. Defense counsel testified that she was unaware of the complainant's continued therapy, her feelings toward defendant, her testimony in the civil trial that defendant applied medication to her vagina, and her meeting with a youth pastor.

Following the hearing, the trial court ruled that defense counsel was ineffective and defendant was entitled to a new trial. The Court of Appeals reversed, reasoning, in part, that collateral estoppel precluded the Court from reviewing the performance of defense counsel because in defendant's legal malpractice case, the Court had held that defense counsel's performance fell within the "attorney judgment rule." The Court further held that counsel was not ineffective on the basis of the claims of error left for its review. *People v Trakhtenberg*, unpublished opinion per curiam of the Court of Appeals, issued May 19, 2011 (Docket No. 290336). Defendant sought leave to appeal in this Court, which we granted. *People v Trakhtenberg*, 490 Mich 927 (2011).

## II. STANDARD OF REVIEW

This Court reviews de novo the application of a legal doctrine, including collateral estoppel. *Estes v Titus*, 481 Mich 573, 578-579; 751 NW2d 493 (2008). The question whether defense counsel performed ineffectively is a mixed question of law and fact; this Court reviews for clear error the trial court's findings of fact and reviews de novo questions of constitutional law. *People v Armstrong*, 490 Mich 281, 289; 806 NW2d 676 (2011).

6

III.  ANALYSIS

A.  COLLATERAL ESTOPPEL

Generally, the proponent of the application of collateral estoppel must show "that (1) a question of fact essential to the judgment was actually litigated and determined by a valid and final judgment, (2) the same parties had a full and fair opportunity to litigate the issue, and (3) there was mutuality of estoppel." *Estes*, 481 Mich at 585.[4]  When the application of collateral estoppel "crosses over" the line between a criminal and a civil proceeding, it has aptly been termed "cross-over estoppel."[5]  Several Court of Appeals opinions have held that a criminal defense attorney may rely on the doctrine of collateral estoppel in order to avoid malpractice liability when a full and fair determination was made in a previous criminal action that the same client had received effective assistance of counsel.  See, e.g., *Barrow v Pritchard*, 235 Mich App 478, 484-485; 597 NW2d 853 (1999).  Yet we must hesitate to apply collateral estoppel in the reverse situation—when the government seeks to apply collateral estoppel to preclude a *criminal* defendant's claim of ineffective assistance of counsel in light of a prior *civil* judgment that defense counsel did not commit malpractice.

The prosecution argues that this Court approved the application of collateral estoppel in the civil-to-criminal context in *People v Gates*, 434 Mich 146; 452 NW2d 627 (1990).  *Gates* stated that "[c]ases involving 'cross-over estoppel,' where an issue

---

[4] While the dissent is critical of the majority's analysis, we believe that our analysis is analytically sound and well supported.

[5] See Brenner, *"Crossing-over:" The issue-preclusive effects of a civil/criminal adjudication upon a proceeding of the opposite character*, 7 N Ill U L Rev 141 (1987).

adjudicated in a civil proceeding is claimed to be precluded in a subsequent criminal proceeding, or vice versa, are relatively recent and rare." *Id.* at 155. And further, the United States Supreme Court has stated that "the doctrine of collateral estoppel is not made inapplicable by the fact that this is a criminal case, whereas the prior proceedings were civil in character." *Yates v United States*, 354 US 298, 335; 77 S Ct 1064; 1 L Ed 2d 1356 (1957), overruled on other grounds by *Burks v United States*, 437 US 1; 98 S Ct 2141; 57 L Ed 2d 1 (1978). It is unnecessary to discuss the relevant holdings of these cases, however, because the prosecution and the Court of Appeals have ignored a fundamental aspect of this case that distinguishes it from *Gates* and *Yates*. In this case, defendant is not the proponent of the application of collateral estoppel; to the contrary, the prosecution asked the Court to apply the doctrine to estop the Court's full review of defendant's claim that he received ineffective assistance of counsel.[6]

In the present case, we must consider the goal of the doctrine of collateral estoppel along with the elements of the doctrine to determine whether the Court of Appeals erred when it precluded review of many of defendant's allegations concerning the ways in which defense counsel erred. The doctrine of collateral estoppel has compelling

---

[6] Similarly, the Court of Appeals erred when it characterized the application of collateral estoppel as "defensive." In determining whether defendant's constitutional right to the effective assistance of counsel was denied, there cannot be an "offense" and a "defense," as the traditional application of collateral estoppel presumes. The prosecution is not in a position where it must somehow "defend" itself; rather, if we must fit this case into the traditional framework of collateral estoppel, it is clear that defendant is put on the defensive. It is true that, ultimately, defendant is challenging his conviction and asking for a new trial, yet he does not do so by attacking the prosecution. He is merely protecting his constitutional right to an effective attorney.

8

underpinnings because it "relieve[s] parties of the cost and vexation of multiple lawsuits, conserve judicial resources, and, by preventing inconsistent decisions, encourage reliance on adjudication." *Allen v McCurry*, 449 US 90, 94; 101 S Ct 411; 66 L Ed 2d 308 (1980), citing *Montana v United States*, 440 US 147, 153-154; 99 S Ct 970; 59 L Ed 2d 210 (1979). Further, collateral estoppel "also promote[s] the comity between state and federal courts that has been recognized as a bulwark of the federal system." *Allen*, 449 US at 96, citing *Younger v Harris*, 401 US 37, 43-45; 91 S Ct 746; 27 L Ed 2d 669 (1971). That said, collateral estoppel "must be applied so as to strike a balance between the need to eliminate repetitious and needless litigation[6] and the interest in affording litigants a *full and fair* adjudication of the issues involved in their claims." *Storey v Meijer, Inc*, 431 Mich 368, 372; 429 NW2d 169 (1988) (emphasis added). In determining whether the party opposing collateral estoppel has had a "full and fair" opportunity to adjudicate his or her claim, a court must take into consideration the

> choice of forum and incentive to litigate . . . . [A]s so often is the case, no one set of facts, no one collection of words or phrases, will provide an automatic formula for proper rulings on estoppel pleas. In the end, decision will necessarily rest on the trial courts' sense of justice and equity. [*Blonder-Tongue Laboratories, Inc v Univ of Illinois Foundation*, 402 US 313, 333-334; 91 S Ct 1434; 28 L Ed 2d 788 (1971).]

See, also, *Storey*, 431 Mich at 373 (stating that "[t]he extent to which the doctrine is applied is also dependent upon the nature of the forum in which the initial determination was rendered").

We hold that the Court of Appeals erred when it applied collateral estoppel to preclude its review of defendant's ineffective-assistance-of-counsel claim because defendant did not have a full and fair opportunity to litigate his claim in the malpractice

9

proceeding. Considering the nature of the forum in which defendant's allegations concerning counsel's errors were initially rejected, it is clear that defendant's interest when pursuing his civil malpractice claim differed from his interest in asserting his constitutional right to effective counsel in the criminal proceeding. Indeed, defendant sought monetary gain in the malpractice case, whereas in his criminal case he seeks protection of a constitutional right and his liberty. Accordingly, because defendant has a different and most likely stronger incentive to litigate counsel's errors in the criminal proceeding, the prior civil litigation concerning counsel's alleged claims of error did not afford defendant a full and fair opportunity to litigate his ineffective-assistance-of-counsel claim.

Because we conclude that the Court of Appeals erred when it applied collateral estoppel, which precluded a full review of defense counsel's alleged errors, we must now decide the merits of defendant's ineffective-assistance-of-counsel claim on the basis of a full review of the evidence revealed at the evidentiary hearing.

### B. INEFFECTIVE ASSISTANCE OF COUNSEL

Both the Michigan and the United States Constitutions require that a criminal defendant enjoy the assistance of counsel for his or her defense. Const 1963, art 1, § 20; US Const, Am VI. In order to obtain a new trial, a defendant must show that (1) counsel's performance fell below an objective standard of reasonableness and (2) but for counsel's deficient performance, there is a reasonable probability that the outcome would have been different. *Armstrong*, 490 Mich at 290; see, also, *People v Pickens*, 446 Mich 298; 521 NW2d 797 (1994) (adopting the federal constitutional standard for an ineffective-assistance-of-counsel claim as set forth in *Strickland*).

10

## 1. DEFENSE COUNSEL'S PERFORMANCE

In examining whether defense counsel's performance fell below an objective standard of reasonableness, a defendant must overcome the strong presumption that counsel's performance was born from a sound trial strategy. *Strickland*, 466 US at 689. Yet a court cannot insulate the review of counsel's performance by calling it trial strategy. Initially, a court must determine whether the "strategic choices [were] made after less than complete investigation," and any choice is "reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." *Id.* at 690-691. Counsel always retains the "duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Id.* In this case, the trial court and the Court of Appeals erred by failing to recognize that defense counsel's error was the failure to exercise reasonable professional judgment when deciding not to conduct any investigation of the case in the first instance.[7] Accordingly, no purported limitation on her investigation of the case can be justified as reasonable trial strategy.[8] We hold that because defense counsel failed to exercise

---

[7] Instead, the trial court framed defense counsel's error as a decision to pursue the "'no sex gratification/denial' defense and not the "'sinister or bad mom defense'" (referring to defense counsel's failure to impeach Tetarly). The Court of Appeals reversed the trial court's ruling that counsel was ineffective for failing to pursue the impeachment defense in part because this decision was part of a reasonable trial strategy. The trial court's erroneous focus on whether these "defenses" were properly pursued led the Court of Appeals to justify defense counsel's decision to pursue only one defense as a matter of trial tactics, which are not reviewable in hindsight.

[8] Contrary to the dissent's view, our conclusion in this case that defense counsel's performance was constitutionally deficient does not equate with judging counsel's strategy in hindsight. The dissent is correct that *Strickland* counsels against a hindsight review of defense counsel's choices and that reviewing courts should "evaluate the

reasonable professional judgment when deciding to forgo particular investigations relevant to the defense, her representation fell below an objective standard of reasonableness.

First, defense counsel failed to identify the factual predicate of each of the five charged counts of CSC-II. Although the charging documents lacked specific factual allegations, defense counsel advised defendant to waive his preliminary examination and she failed to file a motion for a bill of particulars. As a result, in *this* case defense counsel was left without a competent understanding of the prosecution's theories of guilt. In fact, James Sabbota, an expert in criminal trial practice and defending cases involving allegations of criminal sexual conduct, testified at defendant's evidentiary hearing that without either a preliminary examination or a bill of particulars, there was no way to develop a defense in this case.

Second, defense counsel failed to consult with key witnesses who would have revealed weaknesses of the prosecution's case. Particularly, counsel failed to interview Allen, despite the fact that the prosecution included her on its witness list. Moreover, given the exposure the complainant had to multiple interviews and leading questions, a reasonable attorney would have consulted an expert, such as Okla, to testify regarding the

conduct from counsel's perspective at the time." *Strickland*, 466 US at 689. However, the dissent misinterprets our characterization of defense counsel's errors in this case. We do not hold that counsel's performance was objectively unreasonable because her chosen strategy was unsuccessful or that another strategy would have been more successful. Rather, we hold that defense counsel may not use trial strategy to insulate trial decisions if counsel cannot provide a reasonable basis for the chosen strategy, particularly where, as here, the strategy is chosen before conducting any reasonable investigation.

12

propriety of how the complainant made her allegations. Yet the only expert defense counsel consulted was John Neumann, an expert in sex offender evaluation.[9] Perhaps most importantly, defense counsel stated at the *Ginther* hearing that she chose not to consult any witnesses or obtain additional evidence *before* she decided to pursue a defense strategy for which she concluded that no further investigation was necessary.

Lastly, defense counsel's unreasonably inadequate investigation contributed to her failure to sufficiently develop the defense that was actually presented at trial. This case turned solely on credibility—the ultimate question at trial was whether the complainant's allegations of sexual abuse were truthful or, conversely, if her allegations were the result of improper motivations and interviewing techniques. Counsel's failure to cross-examine Tetarly and adequately impeach the complainant was a result of counsel's unreasonable decision to forgo any investigation in the case. In fact, counsel admitted that had she discovered the pertinent information, she would have (1) impeached the complainant with her additional inconsistent statements regarding the number of times defendant allegedly forced her to touch him, (2) impeached the complainant and Tetarly regarding the complainant's impression that defendant did not love her, and (3) consulted experts and Allen regarding proper forensic-interviewing protocol. Also, counsel failed to employ reasonable professional judgment when deciding not to interview HT, who was also

---

[9] As the United States Court of Appeals for the Second Circuit has explained, a defense attorney may be deemed ineffective, in part, for failing to consult an expert when "counsel had neither the education nor the experience necessary to evaluate the evidence and 'make for himself a *reasonable, informed determination* as to whether an expert should be consulted or called to the stand . . . .'" *Eze v Senkowski*, 321 F3d 110, 128 (CA 2, 2003), quoting *Pavel v Hollins*, 261 F3d 210, 225-226 (CA 2, 2001) (emphasis added).

13

listed on the prosecution's witness list. HT was intimately familiar with the relationship between defendant and the complainant. Thus, an attorney exercising reasonable professional judgment would have at least spoken to HT in an attempt to determine if he could provide testimonial evidence that might have corroborated defendant's testimony.

Therefore, we hold that defense counsel's performance was constitutionally deficient because a sound defense strategy cannot follow an incomplete investigation of the case when the decision to forgo further investigation was not supported by reasonable professional judgment. We must now turn to the question whether defendant was prejudiced by the deficiency.[10]

## 2. PREJUDICE[11]

In addition to proving that defense counsel's representation was constitutionally deficient, defendant must show that "but for counsel's deficient performance, a different result would have been reasonably probable." *Armstrong*, 490 Mich at 290, citing *Strickland*, 466 US at 694-696. A defendant may meet this burden "even if the errors of counsel cannot be shown by a preponderance of the evidence to have determined the

---

[10] Additionally, to the extent that defendant cannot show that he was entitled to a new trial in light of newly discovered evidence under *People v Cress*, 468 Mich 678, 692; 664 NW2d 174 (2003), because he or defense counsel could, "using reasonable diligence, have discovered and produced the evidence at trial," defense counsel was further ineffective for not having employed such reasonable diligence. (Citation and quotation marks omitted.)

[11] Although the trial court did not expressly find that defendant was prejudiced by defense counsel's errors and the Court of Appeals failed to reach this issue, in the interests of judicial economy, we find it necessary to consider this issue in the present appeal. See *Peterman v Dep't of Natural Resources*, 446 Mich 177, 183; 521 NW2d 499 (1994), and MCR 7.316(A).

outcome."[12]  *Strickland*, 466 US at 694.  And "[w]here there is relatively little evidence to support a guilty verdict to begin with (e.g., the uncorroborated testimony of a single witness), the magnitude of errors necessary for a finding of prejudice will be less than where there is greater evidence of guilt."  *Brown v Smith*, 551 F3d 424, 434-435 (CA 6, 2008), citing *Strickland*, 466 US at 696.

In the present case, the key evidence that the prosecution asserted against defendant was the complainant's testimony; therefore, the reliability of defendant's convictions was undermined by defense counsel's failure to introduce impeachment evidence and evidence that corroborated defendant's testimony.  The defense strategy not to present the trier of fact with vital evidence was the result of counsel's failure to employ reasonable professional judgment, which limited counsel's knowledge of the existence and importance of that evidence.

Regarding the impeachment evidence, while it is true that defense counsel cross-examined the complainant, the omissions in that cross-examination, coupled with defense

---

[12] The dissent admits in its discussion concerning whether collateral estoppel was properly applied in this case that defendant's burden to show that he was prejudiced by defense counsel's errors is less than the preponderance-of-the-evidence standard. However, the dissent nonetheless appears to hold defendant to a higher burden by concluding that, despite the fact that this case was decided solely on the credibility of defendant and the complainant and the trier of fact was deprived of a substantial amount of relevant information, there was not *at least* a reasonable likelihood that the outcome of the trial would have been different but for counsel's deficient performance.  Indeed, defendant's trial concluded in less than one hour, whereas it took the trial court more than five days to collect testimony during defendant's *Ginther* hearing.  Additionally, we note that our holding today does not resolve the question of guilt or innocence.  Rather, we hold only that defendant is entitled to a new trial so that his guilt or innocence may be properly determined, as required by the Michigan and United States Constitutions.

15

counsel's failure to cross-examine Tetarly, deprived the trier of fact of the necessary and available evidence that discredited the complainant's allegations. Similarly, in *Armstrong*, 490 Mich at 292, this Court held that, although the complainant was cross-examined by defense counsel, "a reasonable probability exists that this additional attack on the complainant's credibility [the introduction of cell phone records] would have tipped the scales in favor of finding a reasonable doubt about defendant's guilt."[13] Had counsel exercised reasonable judgment when investigating the case, she would have been able to impeach the complainant's testimony with the complainant's additional inconsistent statements and with expert testimony that discredited the propriety of the complainant's accusations. Further, defense counsel's failure to impeach Tetarly left the record completely devoid of any motivation that Tetarly may have had to distort and encourage the complainant's allegations. Without this evidence, "in a case that essentially boil[s] down to whether the complainant's allegations of [criminal sexual conduct] [are] true," we have no doubt that the reliability of defendant's convictions is adequately called into question. *Id*. at 293.

Likewise, defense counsel's failure to corroborate the defense that defendant did not have the intent of sexual gratification compounded the prejudicial effect of defense counsel's failure to impeach the complainant's testimony. She did not ask the

---

[13] It is true that the additional impeachment evidence available to the defense counsel in *Armstrong* was documentary evidence and, in this case, the additional evidence was testimonial. But here, defense counsel's cross-examination of the complainant was, without justification, substantially less discrediting than the defense counsel's cross-examination of the complainant in *Armstrong*. This increased the need for the introduction of *any* available impeachment evidence, even if it was testimonial.

16

complainant if defendant had previously applied ointment to her for medical purposes. If she had, presumably, the complainant would have answered in the affirmative, given that she testified accordingly in a later civil proceeding. Likewise, defense counsel did not consult with HT, who likely would have offered testimony that corroborated defendant's testimony.[14] Instead, counsel relied solely on defendant's testimony that he did not possess the requisite intent.

Therefore, if defense counsel had exercised reasonable professional judgment, she would have discovered and presented impeachment evidence and evidence that corroborated defendant's testimony, and there is a reasonable probability that the result of the trial would have been different. Thus, defendant has shown that he was unfairly prejudiced by defense counsel's errors.

## IV. CONCLUSION

We conclude that collateral estoppel cannot be applied to preclude the review of a criminal defendant's claim of ineffective assistance of counsel simply because a previous civil proceeding determined that defense counsel had not committed malpractice. Application of collateral estoppel on that basis fails to satisfy the element of the doctrine requiring that a defendant previously have had an opportunity to fully and fairly litigate his or her ineffective-assistance-of-counsel claim.

Furthermore, defense counsel's performance in this case was constitutionally inadequate and rendered defendant's trial unfair and unreliable. Therefore, we reverse

---

[14] During the course of Tetarly's corresponding civil case against defendant, HT was asked if defendant "ever act[ed] in a sexual manner to [the complainant]." HT responded, "No."

17

the judgment of the Court of Appeals and remand this case to the trial court for a new trial.

                              Michael F. Cavanagh
                              Marilyn Kelly
                              Stephen J. Markman
                              Mary Beth Kelly

STATE OF MICHIGAN

SUPREME COURT

PEOPLE OF THE STATE OF MICHIGAN,

    Plaintiff-Appellee,

v                                                    No. 143386

JACOB TRAKHTENBERG,

    Defendant-Appellant.

_____

Young, C.J. (*dissenting*).

    I respectfully dissent from the Court's decision to grant defendant a new trial on his motion for relief from judgment. While I agree with the majority that collateral estoppel does not bar defendant's claims of error, I cannot adopt the majority's amorphous analysis on that issue and instead would simply hold that the prosecution has not satisfied the elements required to apply collateral estoppel against defendant. Moreover, in applying *Strickland v Washington* to the facts of this case, I do not believe defendant is entitled to relief because he has not shown that counsel's performance was "outside the wide range of professionally competent assistance" leading to "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."[1] Thus, I would affirm the result reached by the Court of Appeals.

_____

[1] *Strickland v Washington*, 466 US 668, 690, 694; 104 S Ct 2052; 80 L Ed 2d 674 (1984).

## I. COLLATERAL ESTOPPEL

The Court of Appeals determined that the collateral estoppel doctrine barred substantive consideration of many of defendant's ineffective assistance of counsel claims.[2] While I agree with the majority that the Court of Appeals erred by applying collateral estoppel to bar many of defendant's claims, I do not adopt the majority's analysis to reach this conclusion. Instead of examining defendant's interests in litigating his legal malpractice and ineffective assistance of counsel claims, I would consider the elements required to apply collateral estoppel, which lead inexorably to the conclusion that defendant is not precluded from alleging ineffective assistance of counsel in a motion for relief from judgment. Accordingly, I would decide the issue on this basis alone.

In *Monat v State Farm Insurance Co*, this Court articulated the elements of collateral estoppel:

> Generally, for collateral estoppel to apply three elements must be satisfied: (1) "a question of fact essential to the judgment must have been actually litigated and determined by a valid and final judgment"; (2) "the same parties must have had a full [and fair] opportunity to litigate the issue"; and (3) "there must be mutuality of estoppel."[3]

---

[2] The Court of Appeals first concluded that the circuit court erred by granting defendant a new trial because the circuit court's analysis was complete as a matter of law once it concluded that his counsel's trial strategy was reasonable. Nevertheless, it went on to examine potential alternative bases for affirming the circuit court's decision, and it ended up rejecting many of defendant's ineffective assistance of counsel claims on the basis of collateral estoppel. Because it was sufficient to resolve defendant's appeal on the basis of its conclusion that trial counsel's strategy was reasonable, the Court of Appeals' decision to apply collateral estoppel was not essential to its holding.

[3] *Monat v State Farm Ins Co*, 469 Mich 679, 682-684; 677 NW2d 843 (2004), quoting *Storey v Meijer, Inc*, 431 Mich 368, 373 n 3; 429 NW2d 169 (1988) (alteration in original). *Monat* also held that the third element, mutuality of estoppel, is unnecessary when the party *asserting* estoppel claims that the opposing party is bound by a previous

2

In this case, the first element of collateral estoppel is not satisfied because defendant's ineffective assistance of counsel claim was *not* "actually litigated and determined by a valid and final judgment" in his legal malpractice action. A party asserting legal malpractice "must establish that, but for the negligence, the outcome of the case would have been favorable to the plaintiff."[4] However, *Strickland* specifically indicates that a criminal defendant may be entitled to a new trial on the basis of ineffective assistance of counsel "even if the errors of counsel cannot be shown by a preponderance of the evidence to have determined the outcome."[5] Because a legal malpractice action requires a *higher* threshold of prejudice than an ineffective assistance of counsel claim, a defendant can establish ineffective assistance of counsel even if he cannot establish legal malpractice. As a result, the Court of Appeals erred by concluding that defendant's ineffective assistance of counsel claim was "actually litigated and determined by a valid and final judgment," and we need not even consider defendant's interests in undertaking his legal malpractice and ineffective assistance of counsel claims as the majority does.

---

adverse ruling: "There is no compelling reason, however, for requiring that the party asserting the plea of res judicata must have been a party, or in privity with a party, to the earlier litigation." *Monat*, 469 Mich at 689 (quotation marks and citation omitted). Accordingly, because the prosecution seeks to apply collateral estoppel against defendant, *Monat* does not require mutuality of estoppel and the fact that the prosecutor was not a party in defendant's legal malpractice claim does not itself bar application of collateral estoppel.

[4] *Radtke v Miller, Canfield, Paddock & Stone*, 453 Mich 413, 424; 551 NW2d 698 (1996).

[5] *Strickland*, 466 US at 694.

3

## II. INEFFECTIVE ASSISTANCE OF COUNSEL

Nevertheless, when examining defendant's substantive claims, I do not believe defendant is entitled to a new trial on the basis of his motion for relief from judgment.[6] The Sixth Amendment of the United States Constitution, incorporated to the states through the Fourteenth Amendment,[7] guarantees a criminal defendant "the right . . . to have the Assistance of Counsel for his defence."[8] *Strickland* requires a defendant to "identify the acts or omissions of counsel that are . . . outside the wide range of professionally competent assistance."[9] This review of counsel's performance is "highly deferential,"[10] must proceed under "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance," and must consider whether the challenged action (or failure to act) "'might be considered sound trial strategy.'"[11] Only when a criminal defendant has shown counsel's performance to be objectively

---

[6] Because defendant is seeking relief pursuant to subchapter 6.500 of the Michigan Court Rules, we review for an abuse of discretion the circuit court's decision to grant this relief. See *People v Osaghae (On Reconsideration)*, 460 Mich 529, 534; 596 NW2d 911 (1999). However, we review de novo any underlying questions of constitutional law. *People v LeBlanc*, 465 Mich 575, 579; 640 NW2d 246 (2002).

[7] *Powell v Alabama*, 287 US 45; 53 S Ct 55; 77 L Ed 158 (1932).

[8] US Const, Am VI. The Michigan Constitution also provides a right to the effective assistance of counsel, see Const 1963, art 1, § 20, although it "does not afford greater protection than federal precedent with regard to a defendant's right to counsel when it involves a claim of ineffective assistance of counsel," *People v Pickens*, 446 Mich 298, 302; 521 NW2d 797 (1994).

[9] *Strickland*, 466 US at 690.

[10] *Id.* at 689.

[11] *Id.*, quoting *Michel v Louisiana*, 350 US 91, 101; 76 S Ct 158; 100 L Ed 83 (1955).

unreasonable can we consider the effect of counsel's performance: a criminal defendant is only entitled to a new trial if he can show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."[12] *Strickland* also provides that "counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary."[13]

The majority claims that counsel was ineffective because she did not conduct a preliminary examination or file for a bill of particulars to determine the nature of the charges against defendant. Counsel testified that she did not conduct a preliminary examination because she did not want to preserve the testimony of certain unfavorable witnesses. Further, while the charging documents lacked specific factual allegations beyond the offenses charged, counsel testified at defendant's *Ginther*[14] hearing that she had police and Family Independence Agency reports from which she could determine the factual allegations supporting the charges against defendant. Counsel also testified that she believed the imprecision in the charging documents would confuse the trier of fact and redound to defendant's benefit. The majority fails to consider that the decision to forgo a preliminary examination or bill of particulars can itself be a reasonable trial strategy under the circumstances of this case, when counsel had information regarding the nature of the charges from documents in her possession.

---

[12] *Strickland*, 466 US at 694.

[13] *Id.* at 691.

[14] See *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

That in hindsight a strategy was not *completely* successful does not render it unreasonable and does not render counsel's assistance ineffective. *Strickland* itself implores reviewing courts to undertake "every effort . . . to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time."[15] In this case, when looking to what strategy counsel developed or could have developed at the time she was preparing for trial, we must consider that *any* strategy must account for defendant's admissions that he touched his daughter's genitals at least seven times—six times, he claims, to administer ointment, and once to determine the extent of the pain that his daughter complained of. As a result of these admissions, trial counsel could not prepare the defense that *none* of the touchings occurred. Rather, counsel had to argue that the times that defendant applied the ointment were not for a sexual purpose. Defendant vehemently denied that he ever touched the complainant's hand to his penis, and trial counsel's strategy with regard to that issue was to impeach the complainant's credibility and explain that defendant put the complainant's hand to his stomach to show her an old-world remedy to relieve stomach pain.

Both the circuit court and the Court of Appeals determined that this trial strategy was objectively reasonable, and they did not err by doing so. Nevertheless, the circuit court held that counsel was ineffective for failing to present the alternative defense that the complainant's mother, Liliya Tetarly, fabricated the allegations. While this defense is

---

[15] *Strickland*, 466 US at 689; see also *People v LaVearn*, 448 Mich 207, 216; 528 NW2d 721 (1995), quoting *Strickland*, 466 US at 689.

6

not necessarily inconsistent with counsel's chosen defense, counsel provided a reasonable explanation at the *Ginther* hearing regarding why she did not choose to present it: she was afraid that basing a defense on Tetarly's relationship with defendant would open the door to information that would reflect badly on defendant, including details about the acrimonious divorce between defendant and Tetarly.[16] The Court of Appeals correctly reversed as an abuse of discretion the circuit court's decision to grant defendant a new trial, the sole basis for which was that counsel did not proffer a defense focusing on Tetarly's character.

Furthermore, the circuit court abused its discretion when it granted defendant a new trial without inquiring into the potential prejudice resulting from counsel's actions because *Strickland* requires a defendant to show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."[17] Even if counsel was deficient for failing to interview CARE House employees or consult with an expert about forensic interviewing techniques, the unrebutted evidence indicates that the complainant's initial revelation was not a product of *any* questioning; rather, both the complainant and her mother have testified that the complainant made the revelation spontaneously. While defendant's expert at the *Ginther*

---

[16] The majority explains that counsel failed to investigate allegations of sexual abuse that Tetarly made in the past against defendant's other ex-wife. However, the record below only indicates that she reported what defendant's son (a toddler at the time) said and did. While the ex-wife was not convicted of abuse, it is not apparent from the record that these allegations are false—or intentionally false—claims of abuse that would implicate Tetarly's general character for truthfulness.

[17] *Strickland*, 466 US at 694.

hearing, Dr. Katherine Okla, testified that she had concerns about the interview techniques that led to the complainant's *subsequent* disclosures involving defendant's touching of her genitals, defendant *admitted* that he had touched the complainant's genitals. Thus, I cannot conclude that there is a reasonably likely probability of a different result occurring but for counsel's failure to interview CARE House employees or consult with an expert.

Moreover, while the majority argues that counsel did not adequately impeach the complainant, counsel's cross-examination of the complainant at trial highlighted inconsistencies regarding the number of times that the complainant claimed that defendant touched her hand to his genitals. Indeed, at one point, the circuit court cut counsel off and acknowledged that the complainant could not explain the inconsistencies between her testimony and a police report.[18] The circuit court determined that three of the five charged counts of second-degree criminal sexual conduct arose out of allegations that defendant touched the complainant's hand to his genitals, and it convicted defendant of one of those three counts. I cannot conclude that further cross-examination of complainant emphasizing any inconsistencies in the complainant's previous statements would have resulted in a reasonably likely chance of acquittal on the single remaining count relating to the touching of defendant's genitals given the circuit court's statement

---

[18] While the majority puts much stock in potential expert testimony to impeach the complainant's testimony, the same experts might also have *bolstered* her credibility by helping to explain the inconsistencies that defense counsel sought to highlight. For instance, CARE House employee Amy Allen testified at defendant's civil trial that it is not unusual for a sexual abuse victim to give conflicting reports about the abuse.

that the complainant's vivid description of defendant's genitals was "not something that a child would fabricate."

The circuit court also found defendant's testimony about administering the medication not to be credible, "mainly because of the major inconsistency in regard to the rebuttal witness's testimony that he was never asked to apply the ointment" and because the complainant's "yeast infections did not occur around the time in which allegedly these incidents occurred . . . ." Nothing in any postconviction testimony undermines Tetarly's claim that the complainant did not suffer from yeast infections at the time of the allegations, and defendant has not offered any proof to undermine that claim. As a result, defendant has not shown a reasonably probable chance of a different outcome at trial on the charges involving defendant's touching of the complainant's genitals. Tetarly always maintained that she did not ask defendant to apply any medication, and she reiterated at the *Ginther* hearing that she never provided defendant with medication to place on the complainant's genital area. Indeed, this testimony that defendant was not allowed to apply ointment is rendered *more* credible by Tetarly's testimony that defendant poured cologne on complainant's genital area in February 2004. This testimony went unrebutted during both the bench trial and the *Ginther* hearing. Moreover, the complainant's testimony at a subsequent civil proceeding corroborates Tetarly's testimony that only Tetarly would apply ointment for the complainant's yeast infections and that defendant once poured cologne on the complainant's genital area.[19]

---

[19] Although the majority observes that the complainant testified otherwise at the civil proceeding, the complainant quickly retracted that statement and reiterated that only her mother would apply the ointment.

Defendant also claims that testimony by his son, HT, would have corroborated defendant's claim that Tetarly insisted that defendant apply the ointment to the complainant's genital area and that, after several minutes of heated argument, he yielded to her request. Nevertheless, defendant offers no proof on this claim beyond his bald assertion that HT was actually present for the conversation that defendant described. In fact, HT was deposed during the civil litigation against defendant, but he did not testify regarding this alleged conversation. Instead, HT testified that defendant often yelled at the complainant to return to her room when, at night, she would appear at his bedroom. This is consistent, however, with the complainant's testimony at the civil trial that sometimes defendant would yell at her to return to her room, although she also testified that sometimes he would tell her to join him in his bed. The lack of an offer of proof regarding whether HT could corroborate defendant's testimony about the ointment sharply contrasts with the situation resulting in a new trial in *People v Armstrong*,[20] in which the defendant offered documentary proof that contradicted specific testimony by the complainant at trial. Accordingly, I cannot say that this potential corroborative testimony is sufficiently concrete to satisfy *Strickland*'s prejudice requirement.[21]

---

[20] *People v Armstrong*, 490 Mich 281; 806 NW2d 676 (2011).

[21] In addition to his ineffective assistance of counsel claims, defendant also claimed that newly discovered evidence requires a new trial. The lower courts correctly rejected defendant's argument. In particular, the Court of Appeals explained that most of defendant's claimed newly discovered evidence could have been discovered at the time of trial. In analyzing the evidence that *actually* constituted newly discovered evidence— the results of defendant's polygraph examination and the complainant's subsequent writings—the Court of Appeals correctly determined that a different result is not probable upon retrial. See *People v Cress*, 468 Mich 678, 692; 664 NW2d 174 (2003).

III. CONCLUSION

For all these reasons, I would affirm the Court of Appeals' ruling that defendant is not entitled to a new trial, although I would vacate its conclusion that collateral estoppel bars substantive consideration of defendant's ineffective assistance of counsel claims. Defendant is not entitled to a new trial pursuant to his motion for relief from judgment because he has not satisfied the elements of *Strickland*—that counsel's performance was "outside the wide range of professionally competent assistance" leading to "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."[22]

Robert P. Young, Jr.
Brian K. Zahra

HATHAWAY, J., did not participate because of a professional relationship with a member of a law firm involved in the matter.

---

[22] *Strickland*, 466 US at 690, 694.