*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

ROSE MARIE DERRICK,

        Defendant-Appellant.

UNPUBLISHED
May 23, 2025
9:14 AM

No. 364774
Calhoun Circuit Court
LC No. 2021-001026-FC

Before: GADOLA, C.J., and MURRAY and REDFORD, JJ.

PER CURIAM.

Defendant, Rose Marie Derrick, appeals by right her sentence of 20 to 40 years' imprisonment for second degree murder, MCL 750.317. Defendant argues that she received ineffective assistance of counsel because defense counsel failed to present mitigation evidence that would have supported a lesser sentence. We affirm defendant's conviction and sentence.

## I. FACTS

This case arises following the fatal stabbing of defendant's boyfriend, Walter May. Defendant and May lived together in an apartment in Battle Creek for over 30 years. On December 5, 2020, defendant's adult son, Ronney, who lived out of state, called 911 and reported that May had been stabbed. Defendant's other adult son, Earl, arrived at defendant's apartment for a visit at the same time as the police who responded to the 911 call. Only defendant and May were in the house. May was sitting on the couch with no visible injury, but was badly sweating. May said he was fine and he wanted everyone to leave. Earl persuaded May to go to the hospital. The police then questioned Earl and asked if anybody called him to the residence that night and he responded that they had not; he was just stopping by for a visit, as he often did. May had been stabbed in the chest near his left nipple. May spent eight days in the hospital and was released on December 13, 2020.

The next morning, on December 14, 2020, defendant called 911 because May was having trouble breathing. Police and paramedics arrived at the apartment within minutes. Paramedics asked May what happened but he was in obvious respiratory distress and would not answer. Defendant told the paramedics that May was recently stabbed and it had punctured his lung.

Defendant also said that she did not know who stabbed May. May then went into cardiac arrest. When the paramedics removed his shirt to administer CPR, they noticed he had bandages on his chest and side. The paramedics assumed these were from his hospital stay for the previous stabbing. To decompress his chest, the paramedics took off May's chest bandage and inserted a catheter to puncture the lung and let air out. The paramedic thought it was strange that the wound was not stitched up and appeared to still be open. The paramedics continued CPR and also used a defibrillator and epinephrine to attempt to restore May's pulse, but their efforts were unsuccessful. May was pronounced dead at the apartment.

The autopsy revealed that May had been stabbed in the chest again, this time just below his left collar bone. The stab wound penetrated the aorta causing hemorrhaging. The new stab wound was determined to be the cause of death. The previous stab wound did not contribute to May's death, in the medical examiner's opinion. The medical examiner found the manner of death to be homicide.

Defendant was arrested and charged with open murder. At trial, the jury was instructed on first-degree murder, MCL 750.316, second-degree murder, MCL 750.317, and voluntary manslaughter, MCL 750.321. The jury found defendant guilty of second-degree murder. At sentencing, defendant's minimum sentencing guidelines range was calculated to be 162 to 337 months (about 13 to 28 years) in prison. The prosecutor argued defendant should be sentenced to a term of imprisonment at the top end of the guidelines range. Defense counsel provided allocution as follows:

> Your Honor, we would ask the Court sentence this matter at the bottom of the guidelines in this particular case given Ms. Derrick's age, her lack of criminal history. The fact that she did call for medical assistance to try to help Mr. May. We would argue that that would demonstrate her lack of intent to kill. The fact that she called for medical assistance and medical assistance did arrive prior to him dying. Your Honor, we would ask that the Court to [sic] consider sentencing at the bottom of the guidelines in this matter. Thank you.

The trial court also heard victim impact statements from May's sisters. Defendant did not give a statement. Defendant was sentenced as a second offense habitual offender, MCL 769.10, to 20 to 40 years' (around 240 to 480 months') imprisonment with credit for 755 days served.

The trial court appointed appellate counsel upon defendant's request. Appellate counsel filed a motion for a new sentencing hearing or for an evidentiary hearing pursuant to *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973). Defendant argued that trial counsel provided ineffective assistance at sentencing by failing to present mitigation evidence which would have supported a lower sentence.

The trial court held a *Ginther* hearing in which trial counsel, attorney Joseph Eldred, and social worker, Claire Metzgar, testified. Ms. Metzgar is a licensed social worker for the Calhoun County Public Defender office. Ms. Metzgar prepared a mitigation report following her review of discovery and multiple interviews with defendant. She also interviewed two of defendant's adult children. Ms. Metzgar wanted to use defendant's history of substance abuse, alcohol abuse, and childhood trauma in her mitigation report. Ms. Metzgar stated that she had planned to get police

reports concerning defendant to get a "better understanding of the home environment," but she did not do so because attorney Eldred determined after trial that proceeding with mitigation was not warranted. Eldred believed that mitigation would not be viewed favorably given the verdict and might be interpreted "as a bunch of excuses." Therefore, the mitigation report was never submitted to the trial court.

Defense attorney Eldred testified that the defense theory at trial was that May stabbed himself in the chest. Eldred wanted to present a defense that May was abusive toward defendant, but defendant made it clear that she did not want to pursue that defense because May was not an abuser, and the family members he spoke to agreed. Eldred also suggested that a third party could have committed the stabbing, but defendant rejected that because she was adamant that no one could have been in her home without her knowledge, considering she had a dog. Eldred considered having defendant admit she had stabbed May, but arguing the situation was more akin to manslaughter than murder. But when he proposed the idea to defendant, defendant maintained that she did not do anything to May.

Eldred brought Ms. Metzgar onto the case with the hope that she would interview defendant and get her to open up a bit more because Eldred was having a difficult time trying to do so himself. Ms. Metzgar kept Eldred updated on the interviews and research she conducted throughout the case. Eldred was aware Ms. Metzgar was preparing a mitigation report, but after the trial, he told her that she no longer needed to work on it. Eldred was aware that the report would have detailed the conflict in defendant's home surrounding her son, and defendant's and May's drug use. But Eldred believed that those subjects would not be helpful for the sentencing court; he was afraid that the court would interpret them as excuses. Instead, Eldred decided to focus on defendant's lack of criminal history and her age (she was 65 years old at the time of her arrest) as mitigation at sentencing. It was the public defender's policy that the decision whether to file a mitigation report was ultimately left to the attorney.

Further, Eldred testified that he was aware of defendant's and May's long history of substance abuse as well as May's history of mental illness. Eldred did not have the records of police contact with defendant's household, which totaled some 500 pages. But he was aware that the police were called quite often in response to defendant's son Ronney causing conflict. Eldred believed that most of this information would be detailed in the PSIR anyway. And Eldred did not want to delve into a critique of the victim's life, because that would not be helpful to the trial court.

After witness testimony, the trial court heard oral argument from appellate counsel and the prosecution. Appellate counsel argued that Eldred made his decision to forgo filing a mitigation report after a less than complete investigation, i.e., without seeing the 500 pages of police reports, and that this constituted ineffective assistance of counsel. The prosecution argued that Eldred made an informed choice not to pursue mitigation after Ms. Metzgar's thorough investigation. The trial court found that Eldred conducted a full investigation and was aware of everything Ms. Metzgar would have put in a mitigation report. The trial court also confirmed that most of the topics that would have been in the mitigation report were outlined in the PSIR, which the judge read before sentencing. The trial court denied defendant's motion for resentencing. Defendant now appeals.

## II. DISCUSSION

Defendant argues that she received ineffective assistance of counsel at sentencing because defense counsel failed to present mitigation evidence. We disagree.

## A. STANDARD OF REVIEW

"Claims of ineffective assistance of counsel present mixed questions of fact and law. Factual findings are reviewed for clear error, and legal conclusions are reviewed de novo." *People v Urbanski*, 348 Mich App 90, 97; 17 NW3d 430 (2023) (citation omitted).

## B. ANALYSIS

Both the United States Constitution and the Michigan Constitution guarantee a criminal defendant the effective assistance of counsel. US Const, Am VI; Const 1963, art 1. "To prevail on a claim of ineffective assistance, a defendant must, at a minimum, show that (1) counsel's performance was below an objective standard of reasonableness[,] and (2) a reasonable probability exists that the outcome of the proceeding would have been different but for trial counsel's errors." *Urbanski*, 348 Mich App at 98. There is a strong presumption that counsel's performance was born from sound trial strategy, and this Court will not second guess counsel on matters of trial strategy. *Id.*; *Strickland v Washington*, 466 US 668, 689; 104 S Ct 2052; 80 L Ed 2d 674 (1984). "Yet a court cannot insulate the review of counsel's performance by calling it trial strategy." *People v Trakhtenberg*, 493 Mich 38, 52; 826 NW2d 136 (2012). "Initially, a court must determine whether the strategic choices were made after less than complete investigation…." *Id*. "Counsel always retains the duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Id*. (citation and quotation marks omitted).

Defendant asserts that trial counsel's representation was deficient because he failed to fully investigate mitigation evidence. While defendant concedes that her personal history was self-reported and detailed in the PSIR, she argues that documentation in the form of police reports corroborating this information was necessary to establish its weight and reliability. However, this does not mean that trial counsel failed to conduct a reasonable investigation. As the *Ginther* hearing testimony revealed, defense attorney Eldred and social worker Ms. Metzgar conducted many interviews of defendant, her family members, and the victim's family members, to compile information for a mitigation report. Through these interviews, Eldred was aware of defendant's personal history, as well as defendant's and May's substance abuse. It is clear that defense counsel conducted a thorough investigation into defendant's personal history. While he did not request police reports concerning defendant, Eldred was aware of defendant's tumultuous home life through his and Ms. Metzgar's investigation. It cannot be said that defense counsel conducted a "less than complete investigation." See *Trakhtenberg*, 493 Mich at 52.

Defendant also asserts that defense counsel should have presented the victim's medical records to the trial court, which detailed his decades-long history of addiction and mental illness. After discussing the matter with Ms. Metzgar and defendant, Eldred elected not to file a mitigation report detailing the victim's medical history because he did not want the sentencing hearing to delve into a critique of the victim's life. Eldred believed this may aggravate the trial court and result in a lengthier sentence. Again, we find that defense counsel made a complete investigation and made an objectively reasonable, strategic choice based on his professional judgment not to

present this evidence.  Thus, defense counsel's choice did not fall below an objective standard of reasonableness.  *Urbanski*, 348 Mich App at 98.

Defendant argues that she was prejudiced by defense counsel's decision not to present mitigation evidence to the sentencing court.  Defendant argues she would have received a lesser sentence had the police reports and medical records been introduced.  We find that there is not a reasonable probability that defendant would have received a lesser sentence.  At sentencing, the trial court heard a victim impact statement from May's sister, in which she mentioned May's struggles with drugs and alcohol.  The trial court also mentioned defendant's own substance abuse history before handing down the sentence.  To argue that the trial court was wholly unaware of defendant's personal history is disingenuous.  The trial judge confirmed at the *Ginther* hearing that he reads every PSIR before sentencing and had read defendant's PSIR before sentencing in this case.  That being said, we cannot find that there is a reasonable probability that had the trial court been presented with a mitigation report, it would have given defendant a lesser sentence. It was also not unreasonable for defense counsel to conclude that offering a mitigation report would have been negatively regarded as "excuse-making" by the trial judge.

Affirmed.

/s/ Michael F. Gadola
/s/ Christopher M. Murray
/s/ James Robert Redford