# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

NOLAND BROWN,

        Defendant-Appellant.

UNPUBLISHED
September 22, 2016

No. 327555
Macomb Circuit Court
LC No. 2014-002069-FC

Before: BORRELLO, P.J., and MARKEY and RIORDAN, JJ.

PER CURIAM.

Defendant, Noland Brown, appeals by right his convictions of voluntary manslaughter, MCL 750.321, and possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b. We affirm.

This case involves a dispute between neighbors over money that turned violent and resulted in the death of the victim, Deryl Bohannon. Defendant lived next door to the victim and the victim's niece, Amber Bohannon, who was the victim's caregiver because the victim had bipolar schizophrenia. The victim's mental illness caused him to talk to himself and "get loud" while doing so. Defendant and the victim were friends, and defendant looked after the victim. In May 2014, defendant loaned the victim some money. On June 3, 2014, Amber disbursed the victim's state assistance check funds to the victim. On the morning of June 4, 2014, Amber received a telephone call from defendant asking whether the victim was paid his state assistance money so that the victim could pay defendant for the May 2014 loan. Defendant said something to the effect that he did not "want to go back to his old ways" or "[he] did not want to take it there, but he want[ed] his money." Amber told the victim about defendant's telephone call.

Later that morning, defendant and the victim encountered each other outside their homes and began arguing about the money. Mikale Campos, the neighbor living on the other side of the victim's home from defendant's home, was in his upstairs bedroom with the window open. Campos was recovering from cataract surgery that he underwent the day before, so his vision was still blurred. Campos could not see what occurred between defendant and the victim, but he testified about what he heard. Campos heard defendant and the victim arguing over money and a noise like a garbage can being thrown. According to Campos, he heard aggressive arguing and cursing for five to ten minutes. Campos then heard the victim say, "What are you going to do, shoot me?" to which defendant responded, "Yes, I will." Campos then heard a gunshot. After

the gunshot, Campos heard a woman say, "Why did you do it?" Defendant responded that he did not know why he did it. The victim died from a gunshot wound to his upper left thigh.

A steak knife was found next to the victim's body. Defendant told responding police officers that the victim pulled a knife on him. Defendant in two later interviews with police stated that the victim rushed him with a knife, and, when defendant was walking backward away from the victim, defendant fell to the ground. The victim continued to come at defendant as he fell, and defendant pulled a handgun from a holster on his hip and shot the victim to stop the victim from hurting him with the knife. Defendant claimed that the victim had pulled a knife on him before this event and that the only difference between this time and that other time is that the victim got shot. Evidence was presented that the victim had pulled a knife on his nephew before this event, and the victim verbally threatened a postal worker on a prior occasion.

First, defendant argues that there was insufficient evidence to overcome defendant's claim of self-defense. We disagree. We review this claim de novo. *People v Hawkins*, 245 Mich App 439, 457; 628 NW2d 105 (2001). "[A] court must view the evidence in a light most favorable to the prosecution and determine whether any rational trier of fact could have found that the essential elements of the crime were proven beyond a reasonable doubt." *People v Wolfe*, 440 Mich 508, 515; 489 NW2d 748 (1992). In conducting this review, a court must not interfere with the jury's role in determining the weight of the evidence or the credibility of witnesses. *Id*. at 514-515; *People v Lee*, 243 Mich App 163, 167; 622 NW2d 71 (2000). "Circumstantial evidence and reasonable inferences arising from that evidence can constitute satisfactory proof of the elements of a crime." *People v Allen*, 201 Mich App 98, 100; 505 NW2d 869 (1993). Any factual conflicts are to be resolved in favor of the prosecution. *Wolfe*, 440 Mich at 515.

At common law, self-defense may justify an otherwise intentional homicide. *People v Riddle*, 467 Mich 116, 126; 649 NW2d 30 (2002). Under the common law and the Self-Defense Act, MCL 780.971 *et seq.*, self-defense is lawful when: (1) the defendant honestly and reasonable believes that he was in danger; (2) the danger he feared was imminent death or serious bodily injury; (3) the deadly force appeared to be immediately necessary, and (4) the defendant was not the initial aggressor or the defendant did not use excessive force. *People v Guajardo*, 300 Mich App 26, 35-36; 832 NW2d 409 (2013). The reasonableness of the defendant's belief that he was in danger "depends on what an ordinarily prudent and intelligent person would do on the basis of the perceptions of the actor." *People v Orlewicz*, 293 Mich App 96, 102; 809 NW2d 194 (2011). Once a defendant satisfies his initial burden of producing "some evidence from which a jury could conclude that the elements necessary to establish a prima facie defense of self-defense exist," the prosecution must prove beyond a reasonable doubt that the defendant did not act in self-defense. *People v Dupree*, 486 Mich 693, 709-710; 788 NW2d 399 (2010).

The majority of defendant's claim is that Campos could not see the altercation because he was recovering from eye surgery, so his testimony was insufficient to disprove self-defense. While Campos's testimony was inconsistent at points, the jury necessarily found his testimony credible. The jury did not believe defendant's account of the event as he portrayed it in his police interviews. From this Court's review of defendant's interviews, his account of the shooting was confusing and unclear. Moreover, the description that defendant provided of the

-2-

knife that the victim rushed him with did not match the description of the knife found by the victim's body. Also, the trajectory of the bullet was downward, and defendant claimed to have fired the gun as he fell to the ground or as he hit the ground. Thus, the jury could reasonably conclude that defendant's statement of what happened was not believable. We will not interfere with the jury's credibility determinations. *Lee*, 243 Mich App at 167.

Moreover, there was sufficient evidence to overcome defendant's claim of self-defense. Campos heard the altercation between the victim and defendant over money. After the gunshot, Campos heard a woman ask defendant why he shot the victim. Defendant stated in his police interview that his wife was outside near him when he fired the gun and that he had to push her away from the victim. This evidence could lead the jury to reasonably infer that defendant's wife did not perceive the victim as an imminent threat to their safety. *Guajardo*, 300 Mich App at 35-36. Defendant told Amber that he did not want to revert to his old ways if the victim did not pay him. Defendant admitted in his interview that he told the victim, who was wielding a broomstick, they would "get into it" if the victim did not pay him. Defendant admitted in his interview that he told the victim, "You can't bring a knife to a gun fight." Also, in his interview, defendant was unclear about when in the altercation the knife was pulled from the victim's pocket. According to defendant's own statements, he had the gun drawn before throwing a garbage can at the victim, and the victim did not have the knife drawn before defendant threw the garbage can. Thus, defendant drew the gun at some point in the altercation before the victim pulled the knife and reholstered it before throwing the garbage can. Therefore, there was evidence to support the jury's finding beyond a reasonable doubt that defendant did not honestly or reasonably believe that he was in danger or imminent death or serious bodily injury that required immediate use of deadly force. *Id*. Thus, there was sufficient evidence beyond a reasonable doubt to support the jury's finding that defendant did not act in lawful self-defense. *Dupree*, 486 Mich at 709-710.

Next, defendant argues that the trial court failed to instruct the jury about self-defense as a defense to voluntary manslaughter and felony-firearm. Defendant alleges that the trial court omitted a material element when it instructed the jury; however, defense counsel expressly approved of the proposed instructions and the instructions as given. Consequently, defendant's argument is waived. *People v Kowalski*, 489 Mich 488, 503; 803 NW2d 200 (2011). Express approval of the trial court's action "constitutes a waiver that *extinguishes* any error." *People v Carter*, 462 Mich 206, 216; 612 NW2d 144 (2000). Even when a jury instruction "improperly omits an element of a crime," which amounts to a constitutional error, defense counsel's explicit approval of the instructions waives the constitutional error. *Kowalski*, 489 Mich at 503. Thus, defendant's claim of instructional error is waived.

Defendant asserts in the alternative that his counsel was ineffective for failing to object to the jury instructions. We find that defendant has failed to demonstrate that he was denied the effective assistance of counsel. "Both the Michigan and the United States Constitutions require that a criminal defendant enjoy the assistance of counsel for his or her defense." *People v Trakhtenberg*, 493 Mich 38, 51; 826 NW2d 136 (2012); see Const 1963, art 1, § 20 and US Const, Am VI. To establish ineffective assistance of counsel defendant must show: "(1) counsel's performance fell below an objective standard of reasonableness and (2) but for counsel's deficient performance, there is a reasonable probability that the outcome would have been different." *Trakhtenberg*, 493 Mich at 51. "Effective assistance of counsel is presumed,

and the defendant bears a heavy burden of proving otherwise." *People v Lockett*, 295 Mich App 165, 187; 814 NW2d 295 (2012).

First, addressing the felony-firearm instruction, the trial court instructed the jury as follows:

> The Defendant is also charged with the sep, separate crime of possessing a firearm at the time he committed the crime of homicide/murder in the second degree. To prove this charge, the prosecutor must prove each of the following elements beyond a reasonable doubt:

> First, that the Defendant committed the crime of homicide/murder in the second degree, which has been defined for you. It is not necessary, however, that the Defendant be convicted of that crime.

> Second, that at the time the Defendant committed the crime, he knowingly carried or possessed a firearm. It does not matter whether or not the gun was loaded. A firearm includes any weapon from which a dangerous object can be shot or propelled by the use of explosives, gas, or air. A pistol is a firearm.

> The Defendant claims that he acted in lawful self-defense. A person has the right to use force or even take a life to defend himself under certain circumstances. If a person acts in lawful self-defense that person's actions are justified and he is not guilty of second degree murder.

The trial court then instructed on self-defense as to the second-degree murder charge. Later, the trial court instructed the jury that it could find defendant not guilty of felony-firearm because of self-defense, and the jury verdict form reflected that instruction. The instructions as a whole could reasonably be understood to require the jury to consider self-defense for second-degree murder as the substantive offense and second-degree murder as an element of the felony-firearm charge. Because the instructions as a whole fairly presented the issue of self-defense for felony-firearm to the jury, *People v Piper*, 223 Mich App 642, 648; 567 NW2d 483 (1997), defendant has not proven that defense counsel's failure to request a separate self-defense felony-firearm instruction fell below an objective standard or reasonableness, *Trakhtenberg*, 493 Mich at 51.

With respect to defendant's claim that defense counsel was ineffective for failing to object to the instruction for voluntary manslaughter because it lacked a self-defense instruction, we conclude defendant has failed to demonstrate that the outcome would have been different had defense counsel objected. *Trakhtenberg*, 493 Mich at 51. In this case, defendant only advanced one theory of self-defense for all of the crimes for which he was charged. He did not assert different self-defense theories for second-degree murder, voluntary manslaughter, and felony-firearm. The jury heard defendant's self-defense argument and the evidence supporting it. Yet, the jury did not find the defendant's argument persuasive and found that the prosecution proved beyond a reasonable doubt that defendant did not act in self-defense. By finding that self-defense did not justify the crimes of second-degree murder and felony-firearm, both of which were properly instructed, the jury necessarily found that the prosecution proved that defendant did not honestly and reasonably believe his life was in imminent danger or that there was a threat

of serious bodily harm and that it was necessary to exercise deadly force to prevent such harm to himself. *Riddle*, 467 Mich at 127. Therefore, had the instruction been objected to, it is unlikely that the jury would have found defendant's theory of self-defense justified voluntary manslaughter, but not second-degree murder or felony-firearm. Therefore, defendant has failed to demonstrate how defense counsel's performance prejudiced him. *Trakhtenberg*, 493 Mich at 51.

We affirm.

/s/ Stephen L. Borrello
/s/ Jane E. Markey
/s/ Michael J. Riordan