*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff-Cross-Appellant,

UNPUBLISHED
November 19, 2020

v

JIMMY DILWORTH,

      Defendant-Cross-Appellee.

No. 346889
Oakland Circuit Court
LC No. 2018-266939-FH

Before: BOONSTRA, P.J., and CAVANAGH and BORRELLO, JJ.

BOONSTRA, P.J. (*concurring in part and dissenting in part*).

I concur with the majority's determination that defense trial counsel was not ineffective in failing to bring a motion to quash the information, because such a motion would have been futile. I disagree, however, with its conclusion that that trial counsel was ineffective in failing to object to Detective Michael Flaviani's testimony that cocaine was found in the trunk of the Dodge Stratus in question.

Certainly, I am mindful of the fact that Detective Flaviani's testimony in that regard was inaccurate, inasmuch as the substance in question was lab tested and found not to reveal the presence of a controlled substance. And I am certainly also cognizant of the potential negative effect that such inaccurate testimony might have. However, for the reasons that follow, I do not find that the record before us warrants the vacating of defendant's convictions and a new trial.[1]

First, I find it noteworthy that although trial counsel's alleged error has been described as that of failing to object to Detective Flaviani's testimony, neither the parties, nor the trial court, nor the majority have articulated precisely what evidentiary objection should have been made. They simply say that the testimony was inaccurate and that, therefore, trial counsel should have

---

[1] The trial court vacated not only defendant's conviction of possession of less than 25 grams of cocaine, MCL 333.7403(2)(a)(*v*), but also his conviction of possession with the intent to deliver less than 50 grams of heroin, MCL 333.7401(2)(a)(*iv*).

-1-

objected to it. But the Michigan Rules of Evidence do not, to my knowledge, provide for an evidentiary objection simply based on claimed inaccuracy of the evidence presented.

Despite the failure to identify an applicable evidentiary objection, we could speculate, I suppose, about what evidentiary objections might have been made. Conceivably, for example, trial counsel might have objected on grounds of Detective Flaviani's lack of personal knowledge, MRE 603, inasmuch as he was not an expert schooled in testing for controlled substances. And that would certainly have been true. However, the fact is that the substance in question field tested positive for controlled substances (even though a later lab test revealed the presence of no controlled substances), and an objection may only have highlighted for the jury the fact of that positive field test. So, trial counsel may have acted reasonably in not objecting on that basis. And, of course, there is a strong presumption that counsel's performance was born from sound trial strategy. *People v Trakhtenberg*, 493 Mich 38, 52; 826 NW2d 136 (2012). In any event, I am not inclined on the record before us to find a reversible error based on a failure to make an evidentiary objection that has not been asserted by defendant or found by the trial court.

What the rules of evidence do contemplate is that trial counsel, when faced with inaccurate testimony, will endeavor to rebut that testimony through cross-examination or by the introduction of other evidence that will demonstrate the inaccuracy and incredibility of the testimony in question. The record in this case suggests to me that trial counsel did precisely that. That is not to say that he did so perfectly, or that he could not have done it better than he did. But that, of course, is not the standard we apply when evaluating the alleged ineffectiveness of counsel. As the majority correctly notes, the applicable standard requires that a defendant show that (1) counsel's performance fell below an objective standard of reasonableness and (2) but for counsel's deficient performance, there is a reasonable probability that the outcome would have been different. *Strickland v Washington*, 466 US 668, 694-696; 104 S Ct 2052; 80 L Ed2d 674 (1984).

So, what does the record show in this case? It shows, first, that Detective Flaviani's testimony regarding the substance in question related specifically to the prosecution's trial exhibit #13:

Q: And then People's proposed Exhibit 13.

A: This would be 1.8 grams of cocaine. It was in the baggie here, it's in the powder substance.

Trial counsel then, in cross-examining Detective Flaviani, established that Detective Flaviani "thought" the substance to be "contraband," and that Detective Flaviani's role was limited to turning it over to Detective James Wren:

A: *Once I located the narcotics I stopped and notified Detective Wren.* I didn't further search after that.

Q: Okay. And -- and you turned -- whatever you found to be -- *you thought to be contraband*, you turned that information over?

A: *I turned the information over. I don't touch it, I tell them where it's at. He comes in and does his thing.*

In subsequently cross-examining Detective Wren, trial counsel established that it was Detective Wren who was the officer in charge of the matter, and that all evidence was turned over to him:

Q: Detective Wren, as indicated, you are the officer in charge in this matter?

A: Yes, sir.

Q: And all things of evidentiary value are turned over to you; am I correct?

A: Correct.

Rachel Scott, a forensic chemist with the Oakland County Sheriff Office Crime Lab testified at trial that she lab tested various substances found both in the Dodge Stratus and in defendant's residence. She testified, for example, that residue located on one of two scales in the residence tested positive for cocaine. She also testified on direct examination as follows:

Q: Thank you. And Ms. Scott, I'm showing you what's been marked as -- or what's been admitted as *People's Exhibit Number 13. Do you recognize that as an item that was tested by your lab?*

A: Yes, I do.

Q: And did you obtain a result for that item?

A: Yes. *The testing of this item did not reveal any controlled substances.*

Ms. Scott then further testified that she prepared a report to document her findings. That report, which was introduced into evidence, specifically concluded that "Chemical testing of the off-white lumpy powder did not reveal the presence of a controlled substance." It also noted the testing of a "tan residue" from a digital scale, and concluded that "Chemical testing of the tan residue revealed cocaine, Schedule 2."

On cross-examination, trial counsel confirmed again that some of Ms. Scott's testing did not reveal a controlled substance:

Q: And I believe it was item -- Exhibit Number 20, I believe? No, I'm sorry. *At least one of the items that was presented to you was not – was not -- did not came back testing with a controlled substance; am I correct?*

A: *Yes. That's correct.*

Of course, this cross-examination would have been even more effective if trial counsel had specifically tied it to People's Exhibit 13, but trial counsel did confirm in cross-examining

Detective Wren that the only cocaine found on the premises[2] was the residue on the scale, as testified to by Ms. Scott:

> Q: And to the best of your knowledge and recollection, there was no sizable amount of cocaine that was found on those premises; am I correct?
>
> A: *Just the trace amounts on the scale.*

And the prosecution itself remedied any deficiency in trial counsel's cross-examination of Ms. Scott with regard to the negative testing of People's Exhibit 13 in its re-direct examination of Detective Wren:

> Q: And *People's Exhibit 13*.
>
> A: Okay.
>
> Q: *Was that the item from the forensic lab that Ms. Scott testified it did not come back with any controlled substance?*
>
> A: *Yes.*

As a result of all of this testimony and evidence, the inaccuracy of Detective Flaviani's testimony was clear and apparent for all to see, so much so that the prosecution's subsequent case presentation and argument to the jury with regard to the cocaine possession charge related *solely* to the residue found on the scale in defendant's residence. It did not relate in any fashion to the substance about which Detective Flaviani had inaccurately testified. And for these reasons, I am unable to conclude that trial counsel's performance, while perhaps not perfect, fell below an objective standard of reasonableness.

Moreover, the evidence was undisputed that a residue was found on a scale in defendant's residence, and that the residue tested positive for cocaine, a schedule 2 controlled substance. See MCL 333.7214 (a)(*iv*). As noted, this cocaine residue was the prosecution's sole focus in arguing for the jury to convict defendant of cocaine possession. And the unrefuted evidence was sufficient to support that conviction. Consequently, defendant was not prejudiced by Detective Flaviani's inaccurate testimony.

I appreciate that the applicable standard of review is that of an abuse of discretion. However, given the totality of the record before us, as outlined in this opinion, and the unrefuted nature of the evidence supporting defendant's possession of cocaine conviction, I am unable to find that vacating defendant's heroin and cocaine convictions is within the range of principled outcomes. *People v Russell*, 297 Mich App 707, 715; 825 NW2d 623 (2012). I would therefore

---

[2] The record does reflect that trial counsel's questions of Ms. Scott at this juncture may have related solely to the residence, as opposed to the Dodge Stratus.

reverse the trial court's order granting defendant's motion for a new trial and reinstate his convictions.

/s/ Mark T. Boonstra