*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

       Plaintiff-Appellee,

v

GERALD LYNN ALLEN,

       Defendant-Appellant.

UNPUBLISHED
May 27, 2021

No. 342999
Saginaw Circuit Court
LC No. 17-043735-FC

## ON REMAND

Before: LETICA, P.J., and GADOLA and CAMERON, JJ.

PER CURIAM.

This matter returns to this Court on remand from our Supreme Court with directions to reconsider one of defendant Gerald Lynn Allen's claims of ineffective assistance of counsel under the standard enunciated in *Strickland v Washington*, 466 US 668; 104 S Ct 2052; 80 L Ed 2d 674 (1984) and *People v Trakhtenberg*, 493 Mich 38; 826 NW2d 136 (2012). After having done so, we once again affirm and remand to the trial court for further proceedings. We do not retain jurisdiction.

## I. BACKGROUND

Allen was convicted by a jury of felonious assault, MCL 750.82(1), and assault with intent to commit great bodily harm less than murder, MCL 750.84(1)(a), for assaulting his wife. Allen was sentenced as a third-offense habitual offender, MCL 769.11, to serve 3 to 8 years' imprisonment for felonious assault and 8 to 20 years' imprisonment for assault with intent to commit great bodily harm less than murder. Our previous opinion detailed the facts surrounding Allen's convictions:

> Allen assaulted his wife while they were alone in their home in Saginaw, Michigan, on the evening of April 21, 2017. After the assault, Allen drove the victim to a hospital in a different county because he wanted to conceal the victim's injuries from her family. At the hospital, the victim received medical treatment for

-1-

her injuries. The police were not contacted, and the victim left the hospital with Allen the next day.

After leaving the hospital, Allen took the victim to a hotel, where they stayed for two days without eating or leaving the room. The victim did not have her cell phone during this time because Allen had taken it away. After leaving the hotel, Allen told the victim that they were traveling to Wisconsin but that he had to first stop at the courthouse in Saginaw. When Allen went inside the courthouse, the victim retrieved her cell phone from the trunk of the vehicle, took the car, and drove away. The victim called her brother for help, and her brother later found Allen at a bus station. Law enforcement was contacted, and Allen was arrested and charged for assaulting the victim.

After Allen's arrest, the police searched his home. The police observed blood in different rooms of the home and found a machete between a bedframe and the wall in a bedroom. Officer DeShawn Harris noted that the machete did not have any blood on it which suggested to him that it had not been used to cause the victim's injuries.

At trial the victim testified that on the evening of the assault, Allen "came up" to her with a machete while she was in bed. The victim testified that the machete "nicked" her shoulder and that she grabbed the machete by the blade to protect herself, cutting her hand and causing it to bleed. The victim further testified that Allen threw a computer at her, strangled her, threw her down the stairs, poked her under the left breast with a kitchen knife, pulled her hair, and kicked her in the face and in the mouth. The victim testified that, at one point, Allen threatened to kill her. The jury convicted Allen of assault with intent to commit great bodily harm less than murder and felonious assault in connection with the machete. The trial court sentenced Allen to terms of imprisonment. . . . [*People v Allen*, 331 Mich App 587, 590-591; 953 NW2d 460 (2020), vacated in part 507 Mich ___; 953 NW2d 197 (2021) (footnotes omitted).]

Allen appealed and, among other things, argued that he was deprived of effective assistance of counsel for several reasons. As relevant to the issue on remand, Allen argued that trial counsel was ineffective for failing to call as witnesses the two physicians who treated the victim at McLaren Hospital. We granted Allen's motion to remand so that he could bring a motion for a new trial and have a *Ginther*[1] hearing. *People v Allen*, unpublished order of the Court of Appeals, entered June 24, 2019 (Docket No. 342999). The following is a summary of the relevant post-conviction proceedings in the trial court:

At the *Ginther* hearing, Dr. Craig Hicks, an emergency medicine physician at McLaren Hospital, testified that he had treated the victim for her injuries related to the assault. Dr. Hicks explained that he had observed that the victim had been injured and was in pain. Dr. Hicks noted that the victim had what appeared to be

---

[1] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

defensive wounds on her hand that were consistent with a weapon like a kitchen knife, not a machete. Dr. Hicks agreed that the hospital records did not reflect that the victim had suffered a cut to her shoulder and that he had ordered a CT scan of the victim's chest and neck. Dr. Hicks testified that the victim had suffered "multiple blows" to her face and head, which could have been done by a fist, hand, or "implement." During treatment, the victim told Dr. Hicks that she had been assaulted, but she did not identify Allen as the person who assaulted her.

Dr. Stephen Defriez, a radiologist at McLaren Hospital, testified that the victim's CT scan did not show evidence that the victim had been strangled. He testified that in order for the CT scan to detect such an injury, the victim would have had needed to be strangled with sufficient force to break the capillaries in her neck. Dr. Defriez also testified that the CT scan of the victim's chest did not show evidence of penetrating trauma. However, a different CT scan showed that the victim had soft tissue swelling on her scalp and forehead region, which Dr. Defriez opined was caused by blunt trauma. The x-ray of the victim's hand did not reveal any additional injuries.

Allen's trial counsel testified at the *Ginther* hearing. He explained that he did not call Dr. Hicks or Dr. Defriez during trial because he wanted to distract the jury's attention from the fact that Allen drove the victim to another county for medical treatment, which counsel believed would demonstrate Allen's consciousness of guilt. Trial counsel believed that Dr. Hicks's and Dr. Defriez's testimony was not necessary because he could still highlight the fact that the police were not called to the hospital while downplaying the fact that Allen took the victim to Flint[, Michigan] to seek medical treatment. [*Allen*, 331 Mich App at 592-593 (footnote omitted).]

The trial court denied Allen's motion for a new trial. In relevant part, the trial court concluded "that trial counsel's decision to not call Dr. Hicks or Dr. Defriez as witnesses constituted reasonable trial strategy." Specifically, the trial court found that trial counsel's testimony established that counsel had reviewed the victim's medical records and then made a conscious decision at the end of trial not to call the doctors as witnesses because the doctors "could not benefit the defense[.]" This was the case because trial counsel "wanted to stay away from the fact that Mr. Allen actually transported [the victim] to a hospital in a different county." The trial court concluded that, even without the doctors' testimony, trial counsel was able to argue that law enforcement was not contacted by medical personnel and that the victim did not identify Allen as her assailant at the hospital.

We agreed with the trial court that Allen was not deprived of effective assistance of counsel. *Allen*, 331 Mich App at 603-605. Specifically, we held as follows:

In this case, aspects of Dr. Hicks's and Dr. Defriez's testimony likely would have enhanced trial counsel's argument that the victim was not credible. However, . . . trial counsel could have reasonably concluded that the absence of their testimony would not result in a fundamentally unfair trial. The victim testified that although she was assaulted with a machete by Allen, she only suffered a

-3-

"nick[ ]" to her shoulder and cuts on her hand that required stitches. The victim agreed on cross-examination that she was not given medical attention for the shoulder injury at the hospital, and the jury was able to view the machete and photographs of the injuries on the victim's shoulder and hand. Trial counsel also elicited from police that the machete recovered after the assault did not have blood on it and appeared to be unused. Also acknowledged by police was that the victim's trial testimony that she was strangled and thrown down the stairs was inconsistent with the report that she made to the police after the assault. Trial counsel used the victim's prior inconsistent statements throughout the trial and her failure to identify Allen as her assailant at the hospital to undermine her credibility. Trial counsel further exploited the prosecutor's failure to present medical testimony about how the victim's wounds were treated at the hospital, urging the jury to use its common sense to conclude that the machete would have caused far more serious injuries than cuts on the victim's shoulder and hand. Finally, the trial court instructed the jurors to use their common sense when weighing and judging the evidence, and jurors are presumed to follow their instructions, *People v Gayheart*, 285 Mich App 202, 210; 776 NW2d 330 (2009). Because Allen was not deprived of a substantial defense, trial counsel's decision not to call Dr. Hicks and Dr. Defriez as witnesses at trial did not fall below an objective standard of reasonableness and counsel was not ineffective in this respect. . . . [*Allen*, 331 Mich App at 604-605 (footnote omitted).]

Allen filed an application for leave to appeal from this Court's decision. In lieu of granting leave, our Supreme Court vacated in part and remanded to this Court for further proceedings. *Allen*, 507 Mich at ___; 953 NW2d at 197. Specifically, our Supreme Court held as follows:

The Court of Appeals erred in holding that "[b]ecause Allen was not deprived of a substantial defense, trial counsel's decision not to call Dr. Hicks and Dr. Defriez as witnesses at trial did not fall below an objective standard of reasonableness and counsel was not ineffective in this respect." [*Allen*, 331 Mich App at 605.] The defendant was not required to show, in order to obtain relief for ineffective assistance of counsel, that trial counsel's failure to call witnesses deprived him of a substantial defense. Rather, a claim of ineffective assistance of counsel premised on the failure to call witnesses is analyzed under the same standard as all other claims of ineffective assistance of counsel, i.e., a defendant must show that "(1) counsel's performance fell below an objective standard of reasonableness and (2) but for counsel's deficient performance, there is a reasonable probability that the outcome would have been different." *People v Trakhtenberg*, 493 Mich 38, 51 (2012); see also *Strickland v Washington*, 466 US 668 (1984). On remand, the Court of Appeals shall resolve the defendant's claim of ineffective assistance of counsel under this standard. In all other respects, leave to appeal is DENIED, because we are not persuaded that the remaining questions

presented should be reviewed by this Court.[2] [*Allen*, 507 Mich ___; 953 NW2d 197.]

## II. STANDARD OF REVIEW AND APPLICABLE AUTHORITY

Generally, "[t]he question whether defense counsel performed ineffectively is a mixed question of law and fact[.]" *Trakhtenberg*, 493 Mich at 47. If the trial court has held a *Ginther* hearing, the trial court must "find the facts, and then . . . decide whether those facts constitute a violation of the defendant's constitutional right to effective assistance of counsel." *People v LeBlanc*, 465 Mich 575, 579; 640 NW2d 246 (2002). "[T]his Court reviews for clear error the trial court's findings of fact and reviews de novo questions of constitutional law." *Trakhtenberg*, 493 Mich at 47. Regard should be given to the trial court's opportunity to assess the credibility of the witnesses who appeared before it. MCR 2.613(C); see also *People v Dendel*, 481 Mich 114, 130; 748 NW2d 859 (2008), amended 481 Mich 1201 (2008). A finding is clearly erroneous if this Court "is left with a definite and firm conviction that the trial court made a mistake." *People v Franklin*, 500 Mich 92, 100; 894 NW2d 561 (2017) (quotation marks and citation omitted).

The Sixth Amendment of the United States Constitution guarantees that criminal defendants receive effective assistance of counsel. *Strickland*, 466 US at 687-688. To demonstrate ineffective assistance of counsel, "a defendant must show that (1) counsel's performance fell below an objective standard of reasonableness and (2) but for counsel's deficient performance, there is a reasonable probability that the outcome would have been different." *Trakhtenberg*, 493 Mich at 51. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *People v Abcumby-Blair*, ___ Mich App ___, ___; ___ NW2d ___ (2020) (Docket No. 347369); slip op at 8, lv pending (quotation marks and citations omitted).

> In examining whether defense counsel's performance fell below an objective standard of reasonableness, a defendant must overcome the strong presumption that counsel's performance was born from a sound trial strategy. Yet a court cannot insulate the review of counsel's performance by calling it trial strategy. Initially, a court must determine whether the strategic choices [were] made after less than complete investigation, and any choice is reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation. Counsel always retains the duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. [*Trakhtenberg*, 493 Mich at 52 (alteration in original; quotation marks and citations omitted).]

---

[2] After this Court's decision was issued in *Allen*, our Supreme Court entered an order in *People v Jurewicz*, 506 Mich 914; 948 NW2d 448 (2020), which effectively overruled a line of authority extending back at least 35 years and which stood for the premise that a failure to call witnesses only amounts to ineffective assistance of counsel where a defendant is deprived of a substantial defense. See e.g., *People v Simmons*, 140 Mich App 681, 685; 364 NW2d 783 (1985) ("Only where counsel's failure to call a witness deprives defendant of a substantial defense is he entitled to relief.").

It is important to remember that "[a] trial strategy is not ineffective simply because it ultimately does not succeed. A strategy is also not ineffective because it entails taking calculated risks, especially if the range of available options for the defense is meager." *People v White*, 331 Mich App 144, 149; 951 NW2d 106 (2020) (citation omitted).

## III. ANALYSIS

Allen argues in his second supplemental brief on appeal that trial counsel's decision not to call Dr. Hicks and Dr. Defriez to testify at trial was unreasonable because their testimony would have "supported the argument that [the victim] was not attacked by a machete," that the victim was not credible, and that Allen did not perpetrate the assaults on the victim. We conclude that trial counsel's decision was based on sound trial strategy.

At the *Ginther* hearing, trial counsel explained that the defense's theory was that Allen did not cause the victim's injuries and that the victim was not credible. Trial counsel indicated that he had reviewed the victim's medical records and that he ultimately decided that he did not want Dr. Hicks or Dr. Defriez to be "produced." Trial counsel made this decision during trial after the prosecutor agreed to produce Dr. Hicks and Dr. Defriez. Counsel explained that he "was trying to down play" the fact that Allen took the victim from Saginaw County, where members of her family lived, to McLaren Hospital in Flint. Counsel indicated that he "thought that a jury could see that as a consciousness of guilt" given that Allen had driven "by two hospitals in Saginaw to take [the victim] to Flint" and given that trial counsel could not fathom a reasonable explanation for Allen's actions. Trial counsel believed that "it would be more effective to argue to the jury that obviously [the victim] didn't say anything" at the hospital given that law enforcement was not contacted and that Allen was permitted to leave the hospital with the victim.

Trial counsel's decision not to call Dr. Hicks or Dr. Defriez was reasonable given the evidence that was presented during the prosecution's case-in-chief. The victim testified that, although Allen had "swung" the machete at her while she was lying down, she only suffered a "nick[ ]" to her shoulder and cuts to her hand. The victim testified that the injury to her shoulder did not require stitches and that she left the hospital with Allen after submitting to testing and receiving stitches in her hand. Officer Harris testified that he located the machete in a bedroom and that the machete did not have blood on it. According to Officer Harris, the machete "looked like it wasn't used," and testimony established that the machete was never analyzed for fingerprints or DNA. Importantly, trial counsel successfully impeached the victim on multiple occasions during cross-examination and elicited testimony from Officer Harris and Detective Busch that was inconsistent with the victim's testimony.

During closing arguments, trial counsel focused on the victim's multiple inconsistent statements and highlighted the improbability of the victim's testimony. Trial counsel argued that, had Allen swung the machete in the manner described by the victim, the machete would have "chopped" the victim's hand and shoulder off, as opposed to merely cutting them. Trial counsel also argued that the victim's injuries would have been far greater if she had been pushed down the stairs and repeatedly kicked. Based on this, trial counsel urged the members of the jury to use their common sense, arguing that it was "impossible" for the assaults to have "happen[ed] the way [the victim] said they happened." Trial counsel also highlighted the fact that the prosecution did not

present any "scientific evidence" or medical testimony.[3] Even without Dr. Hicks's and Dr. Defriez's testimony, the jury was well aware that the victim did not tell medical personnel that Allen caused her injuries, and trial counsel highlighted this during closing argument. Consequently, the trial court's finding that counsel's decision was based on sound trial strategy was not clearly erroneous.

Additionally, even if we were to conclude that trial counsel's performance fell below an objective standard of reasonableness, we would not conclude that, but for said deficiency, there is a reasonable probability that the outcome of the proceedings would have been different. As already discussed in detail, trial counsel was able to make compelling arguments that Allen did not attack the victim with a machete without Dr. Hicks's or Dr. Defriez's testimony concerning the victim's injuries. Furthermore, the jury could have found Allen guilty of assault with intent to commit great bodily harm less than murder based on evidence other than his use of a machete. Specifically, the victim testified that Allen strangled her, grabbed her hair, "dr[ug] [her] by the top of [her] head," and threw her down the stairs. Thereafter, Allen "kicked [the victim] in [her] hair" and "in [her] mouth," causing her mouth to bleed. Testimony supported that blood was found throughout the house and on the victim's "hair bonnet." Photographs depicted the injuries to the victim's face. The victim also testified that Allen "poked [her] under [her] left breast" with a knife and that the knife penetrated that area enough to cause bleeding to occur.

Dr. Hicks testified at the *Ginther* hearing that the victim "had been hit many times in the face and the head" and that there were "large areas of bruising and contusion." According to Dr. Hicks, the injuries to those areas could have been caused by "fist, hand or implement." Dr. Hicks noted that he "ordered a scan of [the victim's] neck," which suggested to him that there was evidence of "substantial, apparent neck trauma."[4] Although Dr. Defriez testified that the scan did not reveal that there was an "edema of the soft tissue" in the victim's neck, he agreed that, "just because [he] didn't see [evidence of neck trauma] on [the] scan [did not] necessarily mean it didn't

---

[3] In Allen's first supplemental brief on appeal, Allen notes that trial counsel told the members of the jury during opening statements that they would hear testimony from "the doctors" and that trial counsel nonetheless failed to call the doctors to testify. However, Allen fails to explain or rationalize in a meaningful manner how this amounted to ineffective assistance of counsel. Therefore, Allen has abandoned the argument. See *People v Martin*, 271 Mich App 280, 315; 721 NW2d 815 (2006). Even so, we note that trial counsel never indicated during opening statements that *the defense* would call the doctors to testify. During closing arguments, trial counsel noted that the prosecutor had failed to offer medical testimony, thereby suggesting to the jury that the prosecution had not met its burden of proof. We fail to see how this amounts to ineffective assistance of counsel.

[4] Dr. Hicks did not recall treating the victim. His testimony was largely based on the medical records.

happen[.]" Importantly, Dr. Defriez testified that the victim's CT scan showed "soft tissue swelling in the scalp in the frontal region" and that the victim had "soft tissue swelling of the forehead region," to her "right face by the cheek," and to her "right lip region." Dr. Defriez opined that the victim sustained "blunt force" trauma to the scalp and face. Consequently, Dr. Hicks's and Dr. Defriez's testimony would have bolstered the victim's testimony that Allen struck her in the head and face and that he strangled her.

To the extent that Allen claims that the doctors would have undermined the victim's claim that she was stabbed in the torso, that is not entirely accurate. Dr. Hicks testified that he "ordered a chest CT for [a] penetrating wound to the torso." Thus, according to Dr. Hicks, there was evidence of an injury to the victim's torso that warranted further investigation. In sum, Dr. Hicks's and Dr. Defriez's testimony at trial would have bolstered the victim's credibility, which would have been damaging to the defense.[5]

Additionally, without Dr. Hicks's testimony, trial counsel was able to persuasively argue that the victim's failure to identify Allen as her perpetrator to medical personnel supported that Allen did not cause the victim's injuries. Dr. Hicks testified at the *Ginther* hearing that it is "not unheard of" for adult victims to fail to identify their assailants and that it is his job to diagnose and treat patients, as opposed to investigate crimes. This testimony would have further weakened the defense's theory that Allen was not the perpetrator of the crimes.

Also, there was overwhelming evidence that Allen was the perpetrator of the crimes. Evidence supported that Allen and the victim were alone in their home on the night of the assaults and that Allen made paranoid statements concerning the victim's desire to kill him during the assaults. The victim's testimony and physical evidence supported that the assaults occurred inside the home. After the assaults occurred, Allen did not call the police. Instead, he drove the victim to a hospital in a different county for medical treatment. After the victim was discharged, Allen and the victim went to a hotel, where they remained for an extended period of time. The victim was eventually able to escape Allen, at which point she contacted her brother. The victim's brother located Allen at a Greyhound bus station. When Allen saw the victim's brother, Allen immediately approached him and stated "let me talk to you, man. I didn't do that." The victim's brother testified that, on one occasion before the crimes, Allen indicated that he believed that the victim was being controlled "through Facebook and the cell phone" by "a narcissist." Testimony from a member of law enforcement supports that Allen made a bizarre statement concerning the victim's desire to harvest his organs. In light of this evidence, we conclude that the trial court did not err in ruling that Allen was not deprived of effective assistance of counsel.

In sum, we again affirm. In doing so, we note that, in our previous opinion, we concluded that the trial court erred in scoring offense variable 8, MCL 777.38, and that remand was necessary to allow the trial court to reconsider the scoring of that variable. *Allen*, 331 Mich App at 595-601.

---

[5] According to trial counsel, the victim "appeared during her testimony" to have "mental health issues." Trial counsel further observed at the *Ginther* hearing that the victim "was an odd witness" and not a "good witness."

That conclusion was not disturbed by the Supreme Court's order. See *Allen*, 507 Mich at ___; 953 NW2d at 197. Therefore, we again remand for further proceedings.

Affirmed and remanded for further proceedings. We do not retain jurisdiction.


/s/ Anica Letica
/s/ Michael F. Gadola
/s/ Thomas C. Cameron