*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

SEMAJ DEANTHANYLOVE MORAN,

Defendant-Appellant.

UNPUBLISHED
May 19, 2026
2:05 PM

No. 365992
Oakland Circuit Court
LC No. 2012-240822-FC

Before: TREBILCOCK, P.J., and CAMERON and LIEVENSE, JJ.

PER CURIAM.

While still a minor, defendant was initially convicted in 2013 of two counts of first-degree premeditated murder, MCL 750.316(1)(a), two counts of first-degree felony murder, MCL 750.316(1)(b),[1] and four counts of possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b. He was sentenced to life in prison with the possibility of parole for the first-degree murder convictions, and two years in prison for his felony-firearm convictions. After the Legislature enacted MCL 769.25 and MCL 769.25a, defendant was resentenced to 40 to 75 years' imprisonment for the first-degree murder charges, and two years' imprisonment for the felony-firearm charges. He argues on appeal that the trial court imposed an unconstitutional "de facto" life sentence, failed to properly consider certain mitigating factors, and that his trial counsel was ineffective. We affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

This case arises out of the home invasion and fatal shooting of two victims in 2012. Defendant, who was 15 at the time, sold one of the victims $30 of marijuana but came to believe that one of the $10 bills she gave him was fake. Defendant and his 21-year-old codefendant went

---

[1] "Moran was convicted of two counts of first-degree murder under two theories—felony murder and premeditated murder, but was sentenced only under the latter." *People v Howard*, unpublished per curiam opinion of the Court of Appeals, issued December 23, 2014 (Docket Nos. 317627 and 318102).

to the victims' house to confront her. According to defendant, his codefendant gave him a gun and told him that he would signal defendant to shoot the victims by flushing the toilet. After hearing the toilet-flush-signal, defendant shot one victim once in the back and twice in the head. The codefendant then threw the other victim down the stairs toward defendant, after which defendant shot her in the head as well. Defendant and his codefendant fled, and defendant abandoned the gun. Defendant was arrested, convicted, and sentenced as noted.

Following the Legislature's enactment of MCL 769.25 and MCL 769.25a, defendant appeared before a new trial judge[2] for resentencing. Defense counsel filed a lengthy memorandum that exhaustively spelled out the entire factual history up to that point to assist the new judge. Counsel further argued in support of sentencing defendant to a minimum of 25 years instead of 40. Counsel did not make any argument regarding a maximum because, at the time, he was under the impression that MCL 769.25a applied, not MCL 769.25. After the issue came up at resentencing, counsel argued in favor of sentencing under MCL 769.25a, which imposed a hard maximum of 60 years, but also argued in the alternative that, if MCL 769.25 applied, which had no hard maximum, that the trial court should not impose a sentence exceeding 60 years. The trial court ultimately concluded, and defendant later conceded, that MCL 769.25 was the applicable statute.

At resentencing, the prosecution requested that the trial court sentence defendant to 40-to-80 years' imprisonment, emphasizing that, while defendant was young, this was not a crime that arose due to a "lack of impulse control" or "failure to understand future consequences[,]" because it was preplanned. Defense counsel argued in favor of the trial court sentencing defendant closer to the 25-year minimum and 60-year maximum. In support of this request, defense counsel discussed: (1) an incident when defendant was three years old in which he accidentally fatally shot his one-year-old brother after their father had left a loaded gun unsecured in the home, which traumatized defendant every day; (2) the fact that defendant was only 15 at the time of the offense, while his codefendant was 21 and more than likely the leader of the two; (3) the sentencing factors under *People v Snow*, 386 Mich App 586, 592; 194 NW2d 314 (1972), and how defendant's youth factored in to those considerations; and (4) the fact that, while defendant had accrued some misconduct tickets while in prison, these events had to be viewed in context of defendant's youth and the fact that some were for minor infractions.

After defense counsel finished, defendant spoke on his own behalf. He expressed that he was sorry to the victims' families but wanted to give them information about his background so they could have "a better understanding" of who he was. He discussed the tragic shooting of his little brother, his mother's alcohol dependence and the abuse she inflicted on him as a result, his role as caregiver for his siblings in light of his mother's substance abuse, his frequent moves due to his homes frequently being the target of gun violence, and that he was bullied at the various schools he attended for being dirty. Defendant acknowledged that, even though he had "been through so much in [his] life[,]" he knew this did not "justify what happened[,]" but believed he "deserve[d] a chance at life" because he never had one. He recognized the sentiment of the victims' families that, since they could no longer see the victims, he should not be allowed to see his family, but his family was innocent, so "why shouldn't they get a chance to have their family

---

[2] The original sentencing judge had since retired.

back" as well. He lamented over the fact that, at a minimum, he would be 57 years old when he is released from prison, which meant he would probably have no chance to have kids. He further expressed the difficulty he had faced with the death of his own family members while he was in prison, asking "how many family members do I have to lose."

The trial court, having reviewed the "extensive submissions" and documentation, sentenced defendant as noted, reasoning:

> As to the defense, the briefing requests the Court, considering the facts and circumstances, sentence the Defendant to . . . no more than 25 years on both counts of first degree [sic], premeditated murder, i.e. the minimum. The Defense especially notes that the Defendant's age at the time of the offense, the circumstances surrounding Defendant's initial discussions with law enforcement about this offense, and how is [sic, his] age, his mother's acquiescence to the discussion with law enforcement, the other tragic shooting that he experienced as a child, . . . and the effect that the co-defendant [sic] being older than the Defendant as well as the inconsistencies of the Defendant's initial statement, including his original denial [of] being the shooter in this case should be noteworthy to the Court in today's decision.

> However, in the Court's perspective, [this] downplays the heinous facts as found to be true by the jury, specifically, that the Defendant was the gunman who murdered both victims in cold blood over ten dollars.

> As (indiscernible) sentencing, the Court must weigh the proportionality of the sentence with the circumstances of the case and the circumstances of the Defendant, and take all into consideration. At the onset, the Court notes this horrible act came to fruition over an alleged fake ten-dollar bill. The ripple effect of the Defendant and his co-defendant's [sic] actions ended two people's lives violently, horrifically, and extensively prematurely. Those families will never heal.

> As to the Defendant and his accomplice, their families grieve their loss as well, but albeit by their own actions. Four sets of families grieve for respective losses. The Court must answer today what range of time the Defendant's family will feel his absence while . . . and weighing that both victims' families will never enjoy that luxury as their loved ones are sadly deceased and not with us.

> This . . . Court's review of the file reveals, as put by the prosecution, these heinous acts were, quote, "premeditated, deliberate, cruel, emotionless, and callous," end quote. Down to the planning of the victims' execution, the co-defendants [sic] agreed on a signal to lure the victims from a safe place of normal interaction to a violent, horrific end. Stunning to the Court was, candidly, the Defendant's allocution just now, which included a plea of sympathy for how he has lost family members, and for the Court to take that into consideration, a reminder that the victims' families struggle with that every single day as well.

The Court's review of the PSI[R] revealed that, sir, you are currently 26, and have been incarcerated since February [2013]. You were 15-years-old at the time of the incident [sic, instant] offense. A jury convicted you on February 12, 2013 . . . of two counts of first degree [sic], premeditated murder, two counts of felony murder as an alternative, and four counts of felony firearm corresponding to the four murder counts. You were originally sentenced to serve life as to the . . . murder counts . . . .

While incarcerated, you obtained your GED. You have some mental health diagnosis [sic], including anti-social traits. You've tested positive for marijuana while incarcerated, and later attended a substance abuse program. The Court also notes it appears you've had significant behavioral issues while incarcerated, ranging from minor to major activity. . . . though the Court notes for the record it's [sic] decision today is not based on the Defendant's conduct while incarcerated. . . . the Court nonetheless appreciates the information regarding the post-conviction [sic] behavior of the Defendant to help further inform the Court as a record on Defendant, but . . . it also shines light as to [the] prospects of successful rehabilitation which is also one of the items the Court is . . . to take into account.

Defendant moved to correct his invalid sentence, arguing, relevant to this appeal, that defense counsel was ineffective for failing to conduct a proper and thorough investigation into his past and present sufficient mitigation evidence, and that the trial court erred by failing to consider his youth as a mitigating factor. Defendant attached a report from a mitigation specialist to his motion, which alleged the proper standard of care for defense counsel in this case was to hire a mitigation expert and conduct a proper mitigation investigation. The report discussed the mitigation expert's own investigation and provided a detailed account of defendant's traumatic history and how his age affected his decisions. After this Court's decision in *People v Eads*, ___ Mich App ___; ___ NW3d ___ (2025) (Docket No. 357332), defendant filed a supplemental motion arguing that his sentence was invalid because it was a *de facto* life sentence that constituted cruel or unusual punishment, as it would require him to serve a term that surpasses his life expectancy.

At the hearing on defendant's motions, the trial court noted that it had discussed defendant's age at resentencing and "took that into consideration." Defendant responded that, while the trial court briefly mentioned defendant's age, it "did not discuss any of the mitigating qualities of youth[]" as required under *People v Boykin*, 510 Mich 171; 987 NW2d 58 (2022), and, indeed, "[p]otentially did the opposite[]" when it considered defendant's behavior in prison. As for his ineffective-assistance claim, the trial court asked defendant what authority imposed the standard of care that defendant claimed existed in this case on defense counsel—that is, what authority required a full mitigation investigation with an expert, and questioned what would be required beyond the extensive narrative provided in the presentence investigation report (PSIR). While defendant cited to various nonbinding guidelines, he acknowledged that there was no legally binding authority imposing the standard of care he alleged on defense counsel. Defendant also reiterated his arguments in his supplemental motion that his sentence was an unconstitutional *de facto* life sentence under *Eads*.

-4-

The trial court denied defendant's motion, finding that defense counsel was not ineffective "in any regard[,]" and that, contrary to defendant's claims, it had properly considered the mitigating factor of his youth. It further determined that *Eads* was inapplicable because it involved a sentence for second-degree murder. Defendant now appeals.

## II. STANDARDS OF REVIEW

"Sentencing decisions are reviewed for an abuse of discretion." *Boykin*, 510 Mich at 182. "An abuse-of-discretion standard recognizes that there may be more than one principled outcome and the trial court may not deviate from that principled range of outcomes." *Id*. Constitutional issues are reviewed de novo. *Id*. at 183. "Whether a person has been denied effective assistance of counsel is a mixed question of fact and constitutional law." *Id*. (quotation marks and citation omitted). "Findings of fact are reviewed for clear error, while constitutional determinations are reviewed de novo." *Id*. (quotation marks and citation omitted). "A finding is clearly erroneous if this Court is left with a definite and firm conviction that the trial court made a mistake." *Id*. at 227-228 (quotation marks and citation omitted). Because this Court denied defendant's motion for remand for a *Ginther* hearing,[3] *People v Moran*, unpublished order of the Court of Appeals, entered September 5, 2025 (Docket No. 365922), review of this issue is limited to errors apparent on the record, *Abcumby-Blair*, 335 Mich App. at 227.

## III. CONSIDERATION OF YOUTH

Defendant first argues that the trial court erred by failing to adequately consider his youth as a mitigating factor during resentencing. We disagree.

"Since 2005, the Supreme Court's message has been clear: one's juvenile status matters, and special consideration must be paid to youthful offenders before the harshest sentences may be imposed." *Boykin*, 510 Mich at 185. Our Supreme Court expanded the United States Supreme Court's reasoning that "children are constitutionally different from adults for purposes of sentencing[,]" *Miller v Alabama*, 567 US 460, 471; 132 S Ct 2455; 183 L Ed 2d 407 (2012), beyond mandatory-life-without-parole sentences to apply to term-of-years sentences, *Boykin*, 410 Mich at 188. Thus, even for term-of-years sentences, trial courts must consider "youth and its attendant circumstances" when sentencing a juvenile defendant. *Id*.

But "[t]he requirement to consider youth at sentencing is not necessarily the same as a requirement to articulate the *Miller* factors on the record during a sentencing hearing." *Id*. at 190. Accordingly, while "[y]outh matters in sentencing decisions involving juvenile offenders, and the trial court is responsible for tailoring a sentence to an individual defendant and for giving reasons for imposing each sentence in order to facilitate appellate review[,]" *id*. at 192, "trial courts need not articulate their bases for considering an offender's youth during sentencing hearings conducted under MCL 769.25 and MCL 769.25a in which the offender is sentenced to a term of years." *Id*. at 190. This is because "none of this Court's sentencing jurisprudence requires trial courts to fulfill these responsibilities by articulating *specific* factors on the record." *Id*. at 192. "Instead, our sentences must follow the principle of proportionality, which requires sentences imposed by the

---

[3] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

trial court to be proportionate to the seriousness of the circumstances surrounding the offense and the offender." *Id*. (quotation marks and citations omitted).

Defendant claims the trial court failed to follow *Boykin* because it failed to provide sufficient analysis on the record for its consideration of his youth under the *Miller* and *Snow* factors. But, as noted, *Boykin* imposed no such requirement on the trial court. So long as the record was sufficient to demonstrate that the trial court did, in fact, consider defendant's youth as a mitigating factor, the trial court satisfied its burden. At resentencing, the trial court explicitly referenced defendant's youth but reasoned that this did not outweigh the severity of the crime. It properly applied the principle of proportionality, *id*., by balancing defendant's youth with the severity of the crime and his actions. Given the deliberate, premeditated nature of the offense and the fact that defendant shot two women a total of four times over a suspected fake $10 bill, the trial court's ultimate imposition of 40 to 75 years' imprisonment despite the mitigating nature of defendant's young age at the time cannot be said to fall outside the range of reasonable and principled outcomes.

Defendant also argues that the trial court impermissibly used his youth as an aggravating factor. He suggests that the trial court's description of the crime as being premeditated, deliberate, and cruel, was impermissible because, under *Miller*, a trial court must "review the circumstances of the offense, not in terms of how heinous it was, but through the mitigating lens of youth." It appears that defendant is attempting to expand the third *Miller* factor—"the circumstances of the homicide offense, including the extent of his participation in the conduct and the way familial and peer pressures may have affected him[,]" *People v Skinner*, 502 Mich 89, 114-115; 917 NW2d 2018 (quotation marks and citation omitted)—to mean that the facts of a crime committed by juveniles may never be used against them.

But not only does this contention directly conflict with Michigan's proportionality jurisprudence, it misses the mark because the "circumstances" this factor references are those that are directly tied to, and impacted by, a defendant's youth. The *Miller* factors do not *preclude* sentencing courts from considering certain facts underlying an offense or offender, they simply require that sentencing courts view the facts of the case through the lens of youth in order to give proper consideration to a defendant's "chronological age and its hallmark features—among them, immaturity, impetuosity, and failure to appreciate risks and consequences." *Miller*, 567 US at 477.

Defendant also claims that the trial court "arguably held [his] youth against him at resentencing, as it noted that his poor misconduct history in prison over the last ten years (while still not yet a fully mature adult) 'shines a light as to prospects of successful rehabilitation,' " which implied "that his poor behavior between ages 15 to 25 made it less likely that he could be successfully rehabilitated." However, while the trial court did make this note, it expressly stated that defendant's conduct while in prison was not a factor the trial court considered in fashioning his sentence. Thus, even if the trial court erred by mentioning defendant's conduct while incarcerated, "any error in this regard was harmless in light of [the] express statement on the record by the trial judge that the information was not considered in passing sentence." *People v Fisher*, 442 Mich 560, 567 n 4; 503 NW2d 50 (1993).

## IV. *DE FACTO* LIFE SENTENCE

Defendant next argues his sentence is an impermissible *de facto* life sentence and is therefore cruel or unusual under *Eads*. We disagree.

We start by noting that *Eads* is factually distinguishable from this case because defendant here *was* convicted of first-degree murder, and, therefore, *was* given the statutory procedural safeguards under MCL 769.25 that the defendant in *Eads* lacked. *Eads*, ___ Mich App at ___; slip op at 11. Additionally, his sentence was not an upward departure from the guidelines, but a statutorily compliant sentence under MCL 769.25. Defendant contends that this Court should nonetheless apply *Eads*'s reasoning because his lengthy prison term will still require him to outlive his average life expectancy, constituting a *de facto* life sentence. Not only do we disagree with defendant's premise, but his argument overlooks the fact that he was sentenced for first-degree murder in accordance with MCL 769.25.

"Legislatively mandated sentences are presumptively proportional and presumptively valid." *People v Burkett*, 337 Mich App 631, 637; 976 NW2d 864 (2021) (quotation marks and citation omitted). By extension, these sentences are presumptively constitutional, because "a proportionate sentence is not cruel or unusual." *People v Bowling*, 299 Mich App 552, 558; 830 NW2d 800 (2013). "In order to overcome the presumption that the sentence is proportionate, a defendant must present unusual circumstances that would render the presumptively proportionate sentence disproportionate." *Burkett*, 337 Mich App at 637. (quotation marks and citation omitted). "Statutes are presumed to be constitutional, and the courts have a duty to construe a statute as constitutional unless its unconstitutionality is clearly apparent." *Id*. (quotation marks and citation omitted).

Because defendant was convicted before the relevant statutes in this case were enacted, and his case was pending in the trial court on June 25, 2012, defendant's resentencing fell under MCL 769.25(1)(b)(*ii*). While MCL 769.25a(4)(c) imposes a hard maximum of 60 years for term-of-years sentences in these cases, MCL 769.25(9) imposes "a term of imprisonment for which the maximum shall be *not less* than 60 years and the minimum term shall be not less than 25 years or more than 40 years." (Emphasis added). Defendant's 40-to-75-year sentence is within the range provided by the statute. It is therefore presumed to be proportionate, and, by extension, constitutional. See *Burkett*, 337 Mich App at 637.

Defendant, therefore, bears the burden of rebutting this presumption. But defendant does not provide any argument on appeal that his case presents any unusual circumstances that render his presumptively proportionate sentence disproportionate, nor are any readily apparent from the record. Thus, the presumption stands, and defendant's sentence is proportionate.

## V. INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant finally argues that defense counsel was ineffective. His argument is comprised of three challenges, that: (1) counsel failed to "argue the correct legal standard" during resentencing, (2) counsel failed to properly investigate defendant's history and present it as mitigating evidence to the trial court, and (3) counsel failed to hire an expert witness to aid the trial court in its decision. We disagree with all three contentions.

"Both the Michigan and the United States Constitutions require that a criminal defendant enjoy the assistance of counsel for his or her defense." *People v Trakhtenberg*, 493 Mich 38, 50; 826 NW2d 136 (2012). To succeed on a claim of ineffective assistance of counsel, "a defendant must show that (1) counsel's performance fell below an objective standard of reasonableness and (2) but for counsel's deficient performance, there is a reasonable probability that the outcome would have been different." *Id*. "[A] defendant must overcome the strong presumption that counsel's performance was born from a sound trial strategy." *Id*. at 52.

Defendant's first challenge alleges that his counsel was ineffective because he failed to cite to any of the newer cases involving juveniles in his resentencing memorandum and failed to inform the trial court that it had to consider his youth as a mitigating factor under *Boykin*. But defense counsel explicitly noted defendant's youth, both in the resentencing memorandum and during argument, which the trial court expressly acknowledged on the record. Thus, even though defense counsel did not explicitly cite to *Boykin*, he still stressed the importance of defendant's youth, and the record, as discussed in Issue I, indicates that the trial court took defendant's youth into account. Because the trial court did, in fact, consider defendant's youth, and was not required to articulate its reasoning, *Boykin*, 510 Mich at 190, defendant cannot demonstrate prejudice, *Trakhtenberg*, 493 Mich at 50. Defendant's first challenge, therefore, fails, because both factors must be satisfied to sustain a claim of ineffective assistance of counsel.

Defendant's second and third challenges contend that counsel was ineffective because he did not hire a mitigation expert to properly investigate his background, and, by extension, failed to present adequate mitigation evidence a proper investigation would have uncovered to the trial court. "Counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Strickland v Washington*, 466 US 668, 691; 104 S Ct 2052; 80 L Ed 2d 674 (1984). Defendant's argument on appeal assumes that the standard of care for defense counsel in a case involving a juvenile resentencing after *Miller* and its progeny mandates that counsel must hire a mitigation specialist to conduct a thorough investigation into the defendant's history. But defendant acknowledged below that there was no binding, legal authority imposing such a standard of care. We decline to create one here.

Moreover, defendant's second and third challenges fail because he cannot demonstrate prejudice. In support of his motion to correct his invalid sentence, defendant submitted a lengthy, thorough report drafted by a mitigation specialist hired after resentencing. The report went into significant detail about defendant's background and how it and his young age affected his decision-making and culpability, yet the trial court still denied the motion. Given that the trial court upheld defendant's sentence when presented with the very evidence he claims defense counsel was ineffective for failing to procure, defendant cannot show that, but for counsel's error, the outcome would have been different. *Trakhtenberg*, 493 Mich at 50.[4]

---

[4] It is also noteworthy that, the various filings and PSIRs on which the trial court relied in fashioning defendant's sentence addressed defendant's youth and traumatic childhood, meaning that, while the mitigation report may have gone into more detail, the general facts underlying defendant's mitigation claims were presented to, and considered by, the trial court

Affirmed.

/s/ Christopher M. Trebilcock
/s/ Thomas C. Cameron
/s/ Andrew J. Lievense